**George BOKAT, Chief Trial Examiner, National Labor Relations Board, et al., Appellants,**

v.

**TIDEWATER EQUIPMENT COMPANY, Appellee.**

No. 23446.

United States Court of Appeals Fifth Circuit.

July 14, 1966.

George H. Cohen, Atty., NLRB, Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Arnold Ord-

man, General Counsel, Dominick L. Manoli, Associate General Counsel, Gary Green, Attorney, NLRB, for appellants.

John Bacheller, Jr., Atlanta, Ga., L. J. Bennet, Brunswick, Ga., Bennet, Gilbert, Gilbert & Whittle, Brunswick, Ga., and Fisher & Phillips, Atlanta, Ga., for appellee.

Before BROWN and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

JOHN R. BROWN, Circuit Judge.

The broad question in this case is whether the District Courts throughout the Circuit are to be open to police the procedural purity of the NLRB's proceedings long before the administrative process is over, or for that matter, scarcely begun.[1] More particularly, the question is whether the District Court should grant an injunction which stays the hand of the Labor Board until the Employer's counsel has finished his interrogation of prospective witnesses in the preparation of the defense to the § 8(a) (5) and (1) charges and—chronologically more significant—until the Board and the review courts have finally disposed of the separate 8(a) (1) charges against the Employer's lawyer alleging coercive interrogation in the course of defending the now postponed § 8(a) (5) and (1) charges against the Employer. The answer to the broad, and to the narrower, question must be, and is, in the negative.

We may draw freely on the Board's brief to summarize how all of this came about.

On January 29, 1965, the Regional Director, following an investigation of unfair labor practice charges filed by the Union,[2] issued a complaint alleging that the Employer[3] violated § 8(a) (5) and (1) of the Act by refusing to bargain with the Union on November 20, 1964, and thereafter, although the Union represented a majority of the Employer's employees in an appropriate unit for collective bargaining. The complaint further alleged that the Employer, through its supervisory personnel, violated Section 8(a) (1) by contemporaneously engaging in numerous acts of interrogation, threats, and promises of benefit which coerced and restrained its employees in the exercise of their rights to become or remain members of, or engage in activities on behalf of, the Union. The Employer filed an answer denying each of the above allegations.

Thereafter, on June 16, 1965, the Regional Director amended the complaint to allege that the Employer, by its agent and attorney, John Bacheller, Jr., violated Section 8(a) (1) in that, on or about April 15, 1965, he interrogated an employee about "his reasons for, and intent in, signing an authorization card designating the Union as his bargaining representative," and interrogated another employee "concerning the contents of an affidavit given by the employee to a

---

1. As demonstrated by the following table, sheer volume puts the job beyond the resources of the Courts as now established:

| Unfair Labor Practice Cases | Fiscal Year Ended June 30, 1965* |
| --- | --- |
| Charges filed | 15,800[1] |
| Complaints issued | 2,498[3A] |
| Formal Hearings Completed | 1,491[3A] |
| Decisions & Orders by Board | 1,374[3A] |
| Proceeding Decided by Courts of Appeals on petitions for review and/or enforcement | 212[19] |

* 30 NLRB ANN. REP. app. A (1965). The bracketed numbers beside the figures refer to tables in the appendix from which the figures were obtained.

---

2. Lodge 839, International Association of Machinists, AFL–CIO.

3. Tidewater Equipment Company.

Board Agent." These acts occurred in the course of Attorney Bacheller's preparation of the Employer's defenses to the original unfair labor practice complaint.

A hearing on the amended complaint was scheduled for June 30, 1965. However, before the hearing began, the Employer by motions to the Board's Chief Trial Examiner sought to sever that part of the complaint relating to Attorney Bacheller's interrogations and to postpone the hearing on the remaining allegations until after a final determination of whether the Attorney's conduct contravened the Act. The motion for severance pressed the following theory. The authorization cards upon which the Union relied in support of its claim of majority status were ambiguous as they did not clearly indicate whether the signer had designated the Union as a bargaining representative or merely authorized the Union to file a representation petition for a Board-conducted secret ballot election. Consequently, it was a proper function of the Employer's attorney in preparing for trial to inquire into the subjective intent of the employees when they signed the authorization cards.[4]

The Chief Trial Examiner denied this motion to sever, which became final on the Board's refusal to review the ruling under § 102.26 of the Board's rules.

After the Chief Trial Examiner's action, and before the Board denied the motion to review, the instant suit was filed. In its court complaint, the Employer set forth essentially the same arguments it pressed before the Board. Jurisdiction of the Federal District Court rested on the assertion that the Employer's refusal to grant the requested severance violated its constitutional right to due process of law as set forth in the Fifth Amendment and as incorporated in Section 10(b) of the Act.

Six months later, the District Court issued its findings of fact, conclusions of law, and order. The order permanently enjoins the Board from conducting its scheduled hearing "until a reasonable time after a final decision" on the unfair labor practice allegations relating to the conduct of Attorney Bacheller. The Court expressly ordered that the hearing on the allegations concerning Attorney Bacheller's conduct "shall not be consolidated with the hearing on other allegations in said case." In addition, the Court, although not requested by the Employer's motion to do so, ordered that counsel for the Employer be permitted to "question such additional employees and former employees of * * * Tidewater as may reasonably be necessary to the preparation of [the Employer's] defenses to the allegations in the" Labor Board Complaint.

In the course of its decision, the District Court did several specific things. First, it undertook to construe the formal charge of § 8(a) (1) violation in

---

4. In support of its contention the Employer cited NLRB v. Peterson Bros., 5 Cir., 1965, 342 F.2d 221, where we held that the ambiguity of the language of the authorization cards together with the circumstances surrounding their signing did not give the Union a majority status upon which to predicate a § 8(a) (5) violation by the Employer. The language in the cards there held to be ambiguous was: " 'This is not an application for membership. This card is for use in support of the demand of this union for recognition from the company in your behalf, *or for an N.L.R.B. election.*' (Emphasis added.)" 342 F.2d at 223.

In this record the authorization card was in significant parts as follows: "I hereby authorize the International Association of Machinists to represent me in collective bargaining on wages and working conditions. It is my understanding that I will be invited to join should the Union be elected to represent me.

        Signature .........................................
        Name .............................................
        Address ..........................................
        Company ..........................................
        Classification ....................................."
See, International Union, United Auto, etc., Workers v. NLRB, D.C.Cir., 1966, 363 F.2d 702.

the Board's amended complaint as to the attorney's interrogation. Rejecting the Board's suggestion that pre-hearing interrogation as such is not illegal, but the manner of it may become coercive, the Court declared that the substance of the interrogation, not its manner, was the subject of the charge. Next, without so much as an affidavit from the lawyer, the Court held on summary judgment—a thing which contemplates "no genuine issue as to any material fact," F.R.Civ.P. 56(c)—that the Attorney could not investigate the complaint against the Employer so long as the charge against him was outstanding. Additionally, to the serious charges supported in part by recanting affidavits from two former employees, that the Board's investigating agent had openly solicited testimony known by him to falsely charge antiunion conduct by the Employer, the Court merely declared that, without deciding the issue, it was substantial enough that the Employer's Attorney was "entirely justified in seeking to further investigate the circumstances surrounding the taking of other statements by Board agents in order to be prepared to meet the probability of perjured testimony at the Board hearing."

The upshot of it was that the District Court concluded that due process would not be afforded unless the Board complaint against the Attorney was first determined. To the earnest suggestion that an ample review existed through this Court after the Board's decision, the Judge, perhaps echoing a complaint so long voiced from some quarters, concluded that the review of the ultimate order of the Board by the Court of Appeals was quite insufficient.[5]

Bearing in mind the 7th Circuit's recent observation that "the holding in Meyers that the Act provides an exclusive and adequate review procedure is an important facet of the broader doctrine requiring exhaustion of administrative remedies," [6] we are of the clear view that the District Court should have dismissed this case without looking further than Myers v. Bethlehem Shipbldg. Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. In that well understood decision, now a quarter of a century old, the Court pointed out that any effort by the Federal District Courts to review or supervise unfair labor practice proceedings prior to the issuance of the Board's final order "is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." 303 U.S. at 50–51, 58 S.Ct. at 463, 82 L.Ed. at 644. And on this record we may echo the 7th Circuit's words that the "principle which requires administrative finality as a prerequisite to judicial review has particular force where, as here, the interlocutory order sought to be reviewed relates to the agency's case-handling procedures." [7] Of course this rests on the dual premise that Congress has prescribed the method and course of judicial review §§ 10(e), (f), 29 USCA §§ 160(e), (f), and that this method is sufficiently adequate to meet constitutional demands.

Implicit in any such standard is the possibility that where that review is not substantially adequate, different and more direct judicial intervention might be available. But in the very rich thirty-year history of the Labor Act and its thousands of litigated controversies,

5. "The present standards of judicial review required the Circuit Court of Appeals to enforce the Board's order if supported by evidence in the record as a whole. Such an appeal does not offer * * * [the Employer] an adequate opportunity to overcome the disadvantage it would encounter in the making of such record as

a result of the procedures insisted upon by * * * [the Board]."

6. Chicago Auto. Trade Ass'n v. Madden, 7 Cir., 1964, 328 F.2d 766, 768, cert. denied, 1964, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747.

7. Chicago Auto. Trade Ass'n v. Madden, supra, 328 F.2d at 769.

those instances have proved to be rare.[8] These cases (note 8, supra), so successfully pressed on the District Court, afford no basis for the extraordinary action taken below. They are, first, representation cases, not unfair labor practice cases, as to which there is a deferred and more limited judicial review under § 9(d). And even within the confines of representation proceedings, judicial intervention is restricted, we have said, to three highly specialized situations. Boire v. Miami Herald Publishing Co., 5 Cir., 1965, 343 F.2d 17, 21. And the Supreme Court characterized the *Leedom* and *McCulloch* exceptions as involving "extraordinary circumstances." Boire v. Greyhound Corp., 1964, 376 U.S. 473, 479, 84 S.Ct. 894, 898, 11 L.Ed.2d 849, 854; 43 Texas L.Rev. 251. See Potter v. Castle Constr. Co., 5 Cir., 1966, 355 F.2d 212, 217 n. 9.

■ There is nothing posed by this record which meets this extraordinary test.[9] Of course, it is a shocking thing if an agent of the Government engaged in solicitation of knowingly false testimony. But the Judge did not find that this occurred. And we have no doubt that the Board, responsible for the behavior and official conduct of its staff members, will find an adequate way of dealing with this so far as the purity of governmental process is concerned.

■■ Insofar as all of this bears on the private rights of the Employer and its counsel now charged with it, there is an adequate judicial review under §§

10(e), (f) if and when the unfair labor practice order is issued. The if here may be a big one either as to the Employer, the lawyer or both. Each may win, which would mean all of this apprehension would wash out. But victory before the Board is not the only hypothesis upon which adequacy of the § 10(e), (f) review procedure is based.

■■ Whether the union authorization card (note 4, supra) presented the ambiguity of Peterson (see note 4, supra) may be both crucial and complex. The complexity comes from ascertaining its true meaning and this presents obviously a fact question which ought to be resolved initially by the Board, not prejudiced by ruling of a District Court. And its true meaning, once ascertained, may go a long, long way in determining the scope of the interrogation permitted to discover what each of the signers meant. That scope, and moreover, the manner in which and the circumstances under which the interrogation may take place are matters initially for Board resolution under the standards now well-known.[10]

On these and all other charges asserted in the amended Board complaint there is an opportunity for the development of a full factual record for review under §§ 10(e), (f).

■ The fact that the attack is voiced in conclusory language of a denial of due process and like constitutional rights does not warrant stopping the Board in its tracks. As have others,[11]

8. Some of the most notable are: Leedom v. Kyne, 1958, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210; McCulloch v. Sociedad Nacional De Marineros De Honduras, 1963, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547; Fay v. Douds, 2 Cir., 1949, 172 F.2d 720.

9. Nor is there anything in this record which makes this case analogous to Deering Milliken, Inc. v. Johnston, 4 Cir., 1961, 295 F.2d 856, or Utah Fuel Co. v. National Bituminous Coal Comm'n, 1939, 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483, thought by the District Court to support the propriety of its action.

10. See Texas Indus., Inc. v. NLRB, 5 Cir., 1964, 336 F.2d 128, 133; NLRB v. Guild

Indus. Mfg. Corp., 5 Cir., 1963, 321 F. 2d 108, 112–14, which approved as a "sound rule," the oft repeated statement from Joy Silk Mills v. NLRB, 87 U.S. App.D.C. 360, 1950, 185 F.2d 732, 743; NLRB v. Lindsay Newspapers, Inc., 5 Cir., 1963, 315 F.2d 709, 711; NLRB v. Ambox, Inc., 5 Cir., 1966, 357 F.2d 138, 141; Hendrix Mfg. Co. v. NLRB, 5 Cir., 1963, 321 F.2d 100, 105; NLRB v. Dan River Mills, Inc., 1960, 274 F.2d 381, 388.

11. Vapor Blast Mfg. Co. v. Madden, 7 Cir., 1960, 280 F.2d 205, cert. denied, 364 U.S. 910, 8 S.Ct. 273, 5 L.Ed.2d 225 (affirming dismissal of injunction suit for want of equity jurisdiction), followed by NLRB v. Vapor Blast Mfg. Co., 7

we have recognized constitutional claims and have accordingly denied enforcement of the Board orders when the Board order comes up for enforcement. NLRB v. Capitol Fish Co., 5 Cir., 1961, 294 F.2d 868; cf. NLRB v. Ed. Friedrich, Inc., 5 Cir., 1940, 116 F.2d 888, 889. Denial of injunctive relief does not begin to foreclose the Employer's claim that the pendency of the charge against the attorney or the trial of it along with the charge against the Employer deprives it of the right adequately to investigate and prepare the defense of the unfair labor practice charges. These are matters open for proof and assertion in the unfair labor practice case.[12]

Consolidation of the charges against Employer and its counsel in matters obviously closely related in relevance and fact, Texas Industries, Inc. v. NLRB, supra, 336 F.2d at 132, for a joint hearing is a matter inevitably committed to the wide discretion of the Board in its control of unfair labor practice hearings. See NLRB v. Local Joint Executive Bd. of Hotel & Restaurant Employees, 9 Cir., 1962, 301 F.2d 149, 155; cf. NLRB v. Air Control Prods. of St. Petersburg, Inc., 5 Cir., 1964, 335 F.2d 245, 247. See also NLRB v. Sewell Mfg. Co., 5 Cir., 1949, 172 F.2d 459, 460. If on §§ 10(e), (f), review of the unfair labor practice order the scheduling or consolidation of the hearing is demonstrated to have denied due process or statutory rights, the remedy is denial of enforcement of the order or other appropriate relief by the Court of Appeals, not the over-the-shoulder supervision of District Courts who, for that

matter, have a very very minor role to play in this statutory structure. See, e. g., § 10(j) (granting temporary injunctions at behest of Board,) 610(*l*) (enjoining certain strikes and boycotts), § 11(2) (enforcement of Board subpoenas).

The preliminary injunction was erroneous and the cause must be remanded with directions to dismiss the complaint. The mandate shall issue forthwith.

Reversed and remanded.

---

Cir., 1961, 287 F.2d 402, cert. denied, 368 U.S. 823, 82 S.Ct. 42, 7 L.Ed.2d 28 (enforcing Board's order after analysis of employer's contention of denial of constitutional rights); see, e. g., NLRB v. Majestic Weaving Co., Inc., 2 Cir., 1966, 355 F.2d 854, 861–862; Northeastern Indiana Bldg. & Constr. Trades Council v. NLRB, D.C.Cir., 1965, 352 F.2d 696, 699–700; Singer Sewing Mach. Co. v. NLRB, 4 Cir., 1964, 329 F.2d 200, 204–208; NLRB v. Johnson, 6 Cir., 1963, 322 F.2d 216, cert. denied, 1964, 376 U.S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971.

12. The Board must, however, recognize that the issue of denial of due process resulting from the inhibitory effect on the prehearing investigation is distinct from the intrinsic merits of the charge of coercive interrogation against the attorney. Wide latitude should be accorded in receiving evidential factual support for the Employer's contention. It is not a matter to be resolved wholly on briefs, either before the Board or the Court of Appeals, or both. See § 10(b) and Board Rule 102.38.