**ATLANTIC RICHFIELD COMPANY,**
Plaintiff,

v.

**FEDERAL TRADE COMMISSION**
et al., Defendants.

**Civ. A. No. 75–H–884.**

United States District Court,
S. D. Texas,
Houston Division.

July 3, 1975.

Motion Denied July 8, 1975.

4

Michael R. Waller, Childs, Fortenbach, Beck & Guyton, Houston, Tex., for plaintiff.

Robert E. Duncan, Washington, D. C., for defendant Federal Trade Commission.

Robert Craft, Houston, Tex., for defendant Continental Oil Co.

Russell H. Smith, Tulsa, Okl., for defendant Cities Service Co.

Cloy D. Monzingo and Jack L. Brandon, Houston, Tex., for defendant Getty Oil Co.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

### I.  INTRODUCTION

Plaintiff has filed suit in this Court seeking to enjoin the defendant Federal Trade Commission ("FTC") and defendant members of the Commission from attempting to enforce a subpoena duces tecum issued to plaintiff pursuant to an investigation of the natural gas industry being conducted by the FTC.  Plaintiff also seeks to enjoin three other corporations, defendants Getty Oil Company ("Getty"), Continental Oil Company ("Conoco") and Cities Service Company ("Citgo"), from complying with similar FTC subpoenas issued to them which arise out of the same investigation.  Plaintiff and the three corporate defendants are joint venturers in "CAGC", a joint venture formed for the purpose of conducting offshore explorations for natural gas and oil.

For the reasons stated herein, the Court concludes that no justiciable case or controversy is presented between plaintiff and the corporate defendants.  As to the controversy between plaintiff and the FTC, to the extent that the issues are now ripe for adjudication on the merits, the equities clearly preponderate in favor of the FTC.  The plaintiff's motions for preliminary injunction and declaratory relief are therefore denied.

### II.  FACTS

Plaintiff is a respondent in an adjudicative proceeding [1] now pending before an Administrative Law Judge.  *In the Matter of Exxon Corporation*, FTC Docket No. 8934 (July 17, 1973) ("Exxon proceeding").  The proceeding was initiated by the FTC against plaintiff and seven other major oil producing companies in the United States on July 17, 1973.  The complaint filed by the FTC alleges violations by the respondents of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a),[2] in that the respondents are allegedly: (1) performing acts or practices which constitute a combination or agreement to monopolize the refining of crude oil into petroleum products; (2) maintaining monopoly power over the refining of crude oil into petroleum products; and (3) restraining trade and maintaining a noncompetitive market structure in the refining of crude oil into petroleum products.  The relevant market includes the northeastern, southeastern and southwestern United States.  Plaintiff's Complaint for Declaratory and Injunctive Relief at 4 (June 3, 1975).

Subsequent to initiating this adjudicative proceeding, the FTC undertook a study of the conduct, performance and structure of the natural gas industry on April 16, 1974.  FTC File 741 0019.  The study was commenced at the direction of the Congress, pursuant to P.L. 93–135, in order to supplement an ongoing study previously limited to the petroleum industry and to document the impact of the effects of decisions by government departments and agencies on the price and supply of energy.  H.R. No. 93–520, 93rd Cong., 1st Sess. (September 20, 1973).  The Congressional mandate authorized an appropriation for the study, and the FTC was directed to report its findings at the earliest practicable time to the Congress.  *Id.* at 24.

On March 13, 1975, the staff conducting the FTC investigation issued subpoenas duces tecum to plaintiff and the three corporate defendants, as joint venturers in CAGC, a sample entity doing business in the energy industry, to require disclosure of the manner in which joint venturers explore for, develop, pro-

---

1.  An adjudicative proceeding is a formal proceeding conducted under one or more of the statutes administered by the FTC which is required by statute to be determined on the record after opportunity for an agency hearing.  16 C.F.R. § 3.2; 15 U.S.C. § 45(b).

2.  "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful."  15 U.S.C. § 45(a)(1).

duce and sell natural gas. Plaintiff moved to quash the subpoenas duces tecum on several grounds on April 11, 1975, but the defendant members of the Commission denied the motion by order of May 12, 1975,[3] and established June 9, 1975, as the deadline for compliance with the subpoenas.[4] Plaintiff filed suit in this Court on June 3, 1975, to avoid having to comply with its subpoena.

## III. JURISDICTION

The Court turns first to the question of subject matter jurisdiction. Plaintiff alleges that jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1337, 1346, 1361, and 5 U.S.C. § 704. The matter in controversy allegedly exceeds the sum of $10,000, and declaratory relief thus is rested upon 28 U.S.C. § 2201. Plaintiff further contends that the action is brought to remedy alleged violations of the Fifth Amendment, the, Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*, and its rules of procedure, 16 C.F. R. Parts 0–4 (1975).

■ As this Court views these contentions, jurisdiction is not proper under 28 U.S.C. § 1346 because the United States is not a party to this action. Furthermore, jurisdiction is not proper under 28 U.S.C. § 1361. That statute confers jurisdiction on courts of the United States outside of the District of Columbia to hear a suit against a federal officer on a writ of mandamus to command him to perform a ministerial duty owed to plaintiff. *E. g., Jarrett v. Resor*, 426 F.2d 213 (9th Cir. 1970). Section 1361 was not meant to confer authority in the instant situation. Plaintiff points to no "ministerial" duty owed to it, but rather alleges that its own rights before an administrative law judge may conceivably be violated. *Prairie Band of Potawatomie Tribe of Indians v. Udall*, 355 F.2d 364, 367 (10th Cir. 1966); Davis, Administrative Law Treatise, § 23.10 at 805–06 (1970 Supp.). *But cf.* Byse and Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action*, 81 Harv. L.Rev. 308 (1967).

■ Based on the allegations contained in plaintiff's complaint, *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974), jurisdiction is not proper under 28 U.S.C. § 1337. Plaintiff's allegations relate to defects in procedure which allegedly violate rules and regulations required to be promulgated under the APA. The suit as framed does not arise under the Federal Trade Commission Act, 15 U.S.C. § 45, and jurisdiction therefore cannot rest on 28 U.S.C. § 1337.

■ Plaintiff's allegations do state a cause of action which arises under the Constitution and laws of the United States. The Court therefore views jurisdiction as proper under 28 U.S.C. § 1331. 13 Wright, Miller & Cooper, Federal Practice and Procedure: Civil § 3562 (1975).[5]

3. The Commission did modify the subpoena to permit coordination of effort between joint venturers so as to eliminate duplicative compilations of material possessed by more than one joint venturer.

4. The deadline has been re-set to July 7, 1975, without opposition in order to accommodate the docket of this Court.

5. Plaintiff's complaint alleges that more than $10,000 is in controversy. However, plaintiff's complaint nowhere else mentions any amount in controversy, nor does plaintiff sue for any damages, except to pray for "other relief as may be just and proper". Commentators have suggested that federal question cases involving interpretation of the APA obviate the need for the presence of a jurisdictional amount when a review of agency action is involved. Davis, Administrative Law Treatise, *supra*, § 23.02 at 789–91; *e. g., Rusk v. Cort*, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962). The Court concludes from the pleadings that jurisdiction is proper in this case under 28 U.S.C. § 1331.

## 8

### IV. JUSTICIABILITY: CASE OR CONTROVERSY

■ This Court's jurisdiction extends only to the adjudication of cases or controversies. In this case, there is a serious question as to whether a proper case or controversy is presented between plaintiff and the three corporate defendants. These defendants were served by the FTC with investigative subpoenas similar to the one issued to plaintiff. Aside from its Fifth Amendment due process contention, plaintiff also objects to the subpoenas on the grounds of irrelevancy, overbreadth and confidentiality of material requested. The Court also notes that the FTC resolution authorizing the instant investigation pursuant to Congressional mandate explicitly recites that any information received during the investigation may be utilized by the FTC to conduct investigations of possible violations of the Clayton Antitrust Act, 15 U.S.C. § 21, and the Federal Trade Commission Act, 15 U.S.C. § 45.

Within the confines of this suit, plaintiff seeks to put distance between itself and the other joint venturers by pointing out their presumably dissimilar positions. Their interests allegedly are adverse to plaintiff's solely because they are not respondents as is plaintiff in the Exxon proceeding, and because their possible compliance with the investigative subpoenas could result in a disclosure of information damaging to plaintiff, since they possess some information which duplicates that which is in plaintiff's files.

■ The Court concludes that the interests of plaintiff and the corporate defendants in the instant suit are not sufficiently adverse so as to give rise to a justiciable case or controversy. Plaintiff asserts on the one hand that the corporate defendants will comply with the subpoenas issued by the FTC, but plaintiff also has succeeded in gaining stipulations from them whereby they agree to withhold compliance until plaintiff can obtain a ruling from this Court resolving the matters at issue. The three cor-

porate defendants have filed no brief or otherwise indicated any opposition to plaintiff's position. Realistically, their positions cannot be viewed as inconsistent with the arguments advanced by plaintiff to the FTC in April, especially with respect to the contention that the investigative subpoenas are irrelevant, overbroad, or request confidential information. Certainly, compliance with allegedly irrelevant and overbroad subpoenas would prove just as burdensome to Getty, Conoco and Citgo as to plaintiff. Additionally, it simply cannot be assumed that these three joint venturers are more anxious than plaintiff to submit information which may prompt an investigative agency to spearhead further inquiries into possible statutory violations.

In short, this Court concludes, as has the United States Supreme Court in another context, *Moore v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 47, 91 S.Ct. 1292, 28 L.Ed.2d 590 (1971), that both plaintiff and the corporate defendants seek the same or a similar result from this litigation. There is, therefore, no present case or controversy between them, and for that reason the three corporate defendants are hereby dismissed from this action.

### V. JUSTICIABILITY: STANDING AND RIPENESS

#### A. Introduction

The APA confers standing to sue upon a person or organization which has suffered a legal wrong because of agency action. 5 U.S.C. § 702. Additionally, the APA defines those actions which are reviewable by a court of the United States, including "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

Taken together, these statutory requirements contribute to a determination as to whether plaintiff has standing to bring this action and whether the action is ripe for judicial review. Conceptually, "standing" and "ripeness" represent different legal notions and occupy

different spheres in the realm of justiciability. Within the context of judicial review of administrative actions, however, those distinctions become somewhat blurred. In this case, standing and ripeness must be evaluated against the mechanism of review already provided by the statutes and regulations.

B. Review of the Issuance of an FTC Subpoena Duces Tecum

1. Enforcement of the FTC Subpoena

██ Subpoenas issued by the FTC pursuant to an investigation are not self-enforcing. Only courts of the United States may enforce such subpoenas upon application by the Attorney General. 15 U.S.C. § 49. Thus, plaintiff is under no present duty to comply with the subpoena and is subject to penalties for failure to comply only if it fails to obey the order of a court which subsequently directs compliance at the conclusion of a hearing instituted by the FTC. *Id.*

2. Requests for Information in the Exxon Proceeding

██ Pretrial discovery in an adjudicative proceeding brought by the FTC is circumscribed by detailed agency rules. 16 C.F.R. §§ 3.31–3.39. Application for issuance of an adjudicative subpoena duces tecum, described in 16 C.F.R. § 3.-34(b), requires that the requesting party submit a written request to the Administrative Law Judge, specifying the material to be produced and demonstrating the relevancy of the requested material and the reasonableness of the scope of the subpoena. 16 C.F.R. § 3.-34(b)(1). A motion to quash may be filed in response to this application, *Id.*, and the Administrative Law Judge thereafter determines the propriety of permitting the requested discovery. 16 C.F.R. § 3.35.

The rules further describe the procedures to be followed during the course of the hearing on the substantive charges. 16 C.F.R. §§ 3.41–3.46. Information obtained in investigations is specifically made admissible in an adjudicative proceeding. 16 C.F.R. § 3.43(c).

3. Appeal of a Decision in the Exxon Proceeding

██ At the conclusion of the adjudicative hearing, a decision is rendered by the Administrative Law Judge. 16 C.F.R. § 3.51. This decision may be appealed to the Commission, 16 C.F.R. § 3.52, and the Commission may adopt, modify or set aside the findings and conclusions of the Administrative Law Judge. 16 C.F.R. § 3.54. Additionally, the rules provide for an interlocutory appeal of a decision by the Administrative Law Judge prior to the time of the hearing. 16 C.F.R. § 3.23(b).

Once the Commission has completed its review of the adjudicative proceedings, it decides whether cease-and-desist orders should be issued for those actions which are proved to be in violation of a statute. 15 U.S.C. § 45(b). This decision is appealable to a United States Court of Appeals, which has exclusive jurisdiction to review the orders of the FTC. 15 U.S.C. §§ 45(c) and (d). The Court of Appeals may affirm, enforce, modify or set aside orders of the Commission. *Id.*

C. Standing and Ripeness in the Instant Case

Recognizing the different statutory and regulatory characteristics of adjudicative versus investigative proceedings, the Court first isolates each proceeding under the scope of the APA to determine whether judicial review is appropriate at this time. On this basis, plaintiff does not now appear to have standing to challenge any alleged irregularity in the conduct of the natural gas investigation; and alleged irregularities in the conduct of pretrial discovery in the Exxon adjudicative proceeding do not now appear to be ripe for judicial review. This latter conclusion is reached not only upon considerations of "ripeness," but also upon a consideration of the doctrine of exhaustion of administrative remedies.

### 1. The Investigative Proceeding

As noted previously, a subpoena duces tecum issued by the FTC investigative staff and approved by the members of the Commission is not self-enforcing. Plaintiff is under no present duty to comply with the instant investigative subpoena, in light of the necessity for a determination by a court of the United States as to whether the subpoena is worthy of enforcement. The FTC must request the Attorney General of the United States to seek such enforcement, and the burden of proof rests with the Government.

Plaintiff does not appear to have standing to sue in the present posture of the case. Being under no present duty to comply, plaintiff has as yet suffered no legal wrong because of the issuance of the investigative subpoenas. Also, plaintiff has an adequate judicial forum in which to challenge the subject subpoenas on the same grounds proffered in the instant case because of the requirements of 15 U.S.C. § 49. Indeed, adjudication of enforcement at this stage would completely duplicate and preempt the breadth and depth of a proper judicial inquiry conducted pursuant to 15 U.S.C. § 49. Agency authority to subpoena information during an investigation is one of the criteria to be evaluated by the "enforcement" court to determine whether the subpoena should be enforced. *Adams v. F.T.C.*, 296 F.2d 861 (8th Cir.), *cert. denied*, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1961).

### 2. The Adjudicative Proceeding

Jurisdiction to review agency action taken as the result of findings of an adjudicative proceeding reposes exclusively with the United States Court of Appeals. 15 U.S.C. §§ 21(d), 45(b). As the United States Court of Appeals for the Fifth Circuit has emphasized, all constitutional, jurisdictional, substantive and procedural issues arising in Commission proceedings may be considered in an appeal, and this statutory right to review has long been viewed as constituting a speedy and adequate remedy at law. *Frito-Lay, Inc. v. F.T.C.*, 380 F.2d 8, 9–10 (5th Cir. 1967).

Plaintiff's contention that the adjudicative proceeding will be infected with procedural irregularities by the garnering of pertinent information in extra-judicial proceedings does not now appear ripe for review. Jurisdiction of complaints about alleged adjudicative irregularities usually resides exclusively with the Court of Appeals. Additionally, no final agency action has been taken within the context of the adjudicative proceeding, 5 U.S.C. § 704, since the Administrative Law Judge has not yet had any opportunity to review the instant contentions.

FTC rules and regulations provide plaintiff with ample opportunities to object to the manner in which the FTC Complaint Counsel conducts discovery, obtains documents, or otherwise allegedly attempts to circumvent administrative procedures during the Exxon proceeding. A finding by the Administrative Law Judge that members of the Complaint Counsel's staff conducted themselves improperly during the discovery stage of the adjudication would merit exclusion of evidence so discovered or even dismissal of the complaint. 5 U.S.C. § 556. Further, the order and findings rendered by the judge and approved by the Commission are subject to review by the Court of Appeals. 16 C.F.R. § 3.54; *see Borden, Inc. v. F.T.C.*, 495 F.2d 785, 787 & n.5 (7th Cir. 1974). An allegation of denial of due process can be raised properly at that time with full relief available to plaintiff.

### D. Exhaustion of Administrative Remedies Doctrine

The corollary to permitting judicial review of only final agency action is the requirement that a litigant exhaust administrative remedies before seeking judicial review, a doctrine well established in the jurisprudence of administrative law. *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23

L.Ed.2d 194 (1969); *American General Ins. Co. v. F.T.C.*, 496 F.2d 197 (5th Cir. 1974).

As the United States Court of Appeals for the Fifth Circuit has recognized, *e. g., Bokat v. Tidewater Equipment Co.*, 363 F.2d 667 (5th Cir. 1966), no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. 363 F.2d at 671 *quoting Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The doctrine is grounded upon several considerations: (1) the complaining party may ultimately prevail in the administrative proceeding; (2) fact questions may be presented which require factual determinations more properly addressed to the expertise of an agency than to a federal district court; and (3) resolution of these fact questions by the agency may effectively reduce or eliminate entirely the need for judicial review. 363 F.2d at 671–72.

Since the doctrine represents a general guideline rather than an inflexible command, it is not without exceptions. *Bristol-Myers Co. v. F.T.C.*, 469 F.2d 1116, 1118 (2d Cir. 1972). Several courts have reached the merits of questions not exhausted by administrative review,[6] and at least three pertinent exceptions have come to be recognized: (1) where the agency has clearly violated a right secured by statute or agency regulation, *Leedom v. Kyne*, 358 U.S. 184, 188–89, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); (2) where the issue involved is a strictly legal one, *McKart v. United States, supra*, 395 U.S. at 197–99, 89 S. Ct. 1657; or (3) where the issue cannot be raised upon judicial review of a later order of the agency, *Jewel Companies,*

*Inc. v. F.T.C.*, 432 F.2d 1155, 1159 (7th Cir. 1970).[7]

**E. Propriety of Reviewing Plaintiff's "Unexhausted" Claims**

Plaintiff has not yet suffered any legal wrong which gives it standing to complain about the issuance of the investigative subpoenas. 5 U.S.C. § 702. No final agency action has yet occurred in the adjudicative proceeding for which judicial review is now appropriate. 5 U.S.C. § 704.

With no justiciable case or controversy now available to plaintiff as to the conduct of either the investigative or the adjudicative proceedings when viewed separately, plaintiff focuses on the alleged interaction of these two proceedings to suggest the presence of justiciability by fusion. Plaintiff contends that as a respondent in the *Exxon* adjudicative proceeding, it is entitled to certain procedural protections during the course of pretrial discovery, 5 U.S.C. § 555(d), and that the procedural rules pertinent to adjudicative proceedings, especially 16 C.F.R. § 3.34 (subpoenas duces tecum to issue during adjudicative proceeding only on showing of good cause) and § 4.7 (ex parte communications prohibited between members of FTC investigative and adjudicative staffs and Administrative Law Judge during an adjudicative proceeding), establish a "cordon sanitaire" around the *Exxon* proceeding.

The purportedly inviolate borders of such a proceeding were allegedly overrun in this case when FTC investigative staff counsel subpoenaed information from the members of CAGC. Such subpoenaed information is alleged to be so closely related to matters being adjudicated in the *Exxon* proceeding that com-

---

6. For an abridged listing of such cases, *see Bannercraft Clothing Co. v. Renegotiation Board*, 151 U.S.App.D.C. 174, 466 F.2d 345, 354 n. 7 (1972).

7. The Fifth Circuit has somewhat blunted the thrust of these exceptions. Judicial in-

tervention is not justified where the merit of a jurisdictional attack is far from clear and one of the injuries sought to be avoided is the normal cost of administrative litigation. *Frito-Lay, Inc. v. F.T.C., supra*, 380 F.2d at 10.

pliance by plaintiff or the three corporate defendants with the investigative subpoenas would allegedly permit the FTC to obtain information useful to its pretrial preparation in the *Exxon* proceeding without first having to justify such a request before the Administrative Law Judge. A denial of due process allegedly results.

Analyzing plaintiff's unexhausted claims strains the concept of judicial reviewability to its natural limits. First, no exception to exhaustion seems applicable here: (1) the agency has violated no right secured by statute or regulation merely by issuing an investigative subpoena that it has not yet attempted to enforce;[8] (2) the issue presented is not strictly a legal one because the fact of extensive similarity between investigative and adjudicative information is presumed to exist *arguendo* by plaintiff; (3) clearly, judicial review of any agency action related to the *Exxon* proceeding remains available, pursuant to 15 U.S.C. § 45(b).

Second, and more importantly, the hypothetical nature of plaintiff's thesis cannot be avoided. Plaintiff contends that prejudice amounting to a denial of due process *will occur* because the sanctity of an already pending adjudicative proceeding *will be violated* by the receipt of information through an investigation. Such a prognosis of prejudicial error and potential violation of constitutional rights presumes that the information sought in the investigation will be directly pertinent to the adjudicative proceeding. The prognosis further presumes that FTC adjudicative and investigative staffs will engage in mutual conduct violative of agency rules and the APA, and that illicit ex parte communications will be attempted. Finally, the Court is asked to presume that improper agency conduct at the outset caused the investigative subpoena to be issued: the

agency's investigative efforts directed at CAGC are alleged to be taken in bad faith, considering the pendency of the *Exxon* adjudicative proceeding, and plaintiff's involvement therein.

These presumptions do not properly warrant judicial recognition at this time. When an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed. *Pacific Molasses Co. v. F.T.C.*, 356 F.2d 386, 389 (5th Cir. 1966). Once the agency creates procedural rules under which its actions are to be judged, it denies itself the right to violate these rules. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1957). A violation of procedural rules by an agency from which prejudice results dictates that any action taken as a result of the proceedings cannot stand. *Pacific Molasses Co. v. F.T.C.*, *supra*, 356 F.2d at 390.

When a similar due process attack was levelled against the National Labor Relations Board, the United States Court of Appeals for the Fifth Circuit declared:

"The fact that the attack is voiced in conclusory language of a denial of due process and like constitutional rights does not warrant stopping the Board in its tracks. As have others, we have recognized constitutional claims and have accordingly denied enforcement of the Board orders when the Board order comes up for enforcement."

*Bokat v. Tidewater Equipment Co.*, *supra*, 363 F.2d at 672.

F. Doctrine of Abbott Laboratories v. Gardner

Having examined in detail the plaintiff's arguments as set forth above, this Court is reluctant to conclude that plaintiff has standing at this time to com-

---

8. The United States Court of Appeals for the Fifth Circuit has characterized the *Leedom v. Kyne* exception as being very narrow and rarely successfully invoked. *United States v.*

*Feaster*, 410 F.2d 1354 (5th Cir.), *cert. denied*, 396 U.S. 962, 90 S.Ct. 427, 24 L.Ed.2d 426 (1969).

plain of the decision by the Commission to issue the subpoena, or that the propriety of issuance is now ripe for adjudication, whether the two agency proceedings are viewed separately or together. *See generally* Annotation, *Jurisdiction of Federal District Court to Entertain Attacks on Federal Trade Commission's Actions*, 16 A.L.R. Fed. 361 (1973).

The Court would conclude its inquiry at this point and dismiss this case for lack of justiciability were it not for the decisions by the United States Supreme Court in a trilogy of cases headed by *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Plaintiff alludes to these authorities in support of its position. The cases dealt with the issue of pre-enforcement judicial review of challenged agency regulations. Propriety of the issuance of an investigative subpoena was not at issue there, but the Court addressed the question of the ripeness of a challenge to agency action in broad terms.

In the ·*Abbott Laboratories* case, the Government propounded several contentions on which to support its position that a challenge to the regulations was not then ripe for review: (1) that the agency could not implement the subject regulations directly, but rather had to rely upon an authorization from the Attorney General of the United States to institute criminal and seizure actions for violations of the statute; (2) that the subject regulations did not have an immediate impact on the companies involved; (3) that the subject regulations could properly be challenged in a subsequent judicial proceeding for enforcement; and (4) that incurring mere financial expense in complying with, or challenging, the regulations did not confer standing on the companies.

The Court rejected all of these contentions and held that: (1) the regulations did not advise the Attorney General of violations, but purported to state directly what was a violation as authorized by statute, 387 U.S. at 151, 87 S.Ct. 1507; (2) the regulations were clear-cut, were effective immediately upon publication and were expected to be complied with, 387 U.S. at 152, 87 S.Ct. 1507, and failure to comply would potentially subject the companies to serious criminal and civil penalties, *Id.* at 153, 87 S.Ct. 1507; (3) severe and unnecessary harm would befall the companies if they were permitted to raise their challenges to the regulations only as a defense to an action brought by the Government, *Id.*; and (4) plaintiffs have standing because the regulations are directed specifically at them, *Id.* at 154, 87 S.Ct. 1507.

The challenged agency action in the instant case is directed at plaintiff, is expected to be complied with and is purported to be directly authorized by statute. Additionally, there is a suggestion in the *Abbott Laboratories* opinion that allegations of denial of procedural due process by an agency may raise problems particularly appropriate for pre-enforcement judicial review under certain circumstances. This was the interpretation that Mr. Justice Fortas put on the majority opinion. In dissent, he stated: "At least in cases where the claim is of erroneous action *rather than* the lack of jurisdiction or *denial of procedural due process,* a suit for injunctive or declaratory relief will not lie . . ." 387 U.S. at 178, 87 S.Ct. at 1532 (Fortas, J., dissenting) (emphasis added). Although he contested the propriety of pre-enforcement judicial review of erroneous agency action, Justice Fortas apparently acknowledged the propriety of such review when an allegation is made that procedural due process has been denied.[9]

9.  In another case in the triology, *Toilet Goods Assoc. v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), the Supreme Court affirmed a decision which held that pre-enforcement judicial review was not ripe under the circumstances presented in that case. The differences which the Court saw between the *Abbott Laboratories* and *Toilet Goods* cases focused on the Court's inability, in the latter case, to determine: (1) precisely

Considering the broad language utilized by the Supreme Court in the *Abbott Laboratories* case, this Court concludes, out of an abundance of caution, that a limited portion of the instant case is arguably ripe for consideration at this time. The standard established for determining ripeness requires an evaluation of the hardship to the parties of withholding court consideration. 387 U.S. at 148, 87 S.Ct. 1507; *see* Davis, Administrative Law Treatise, *supra*, chapter 21.

▇▇ The agency has formalized its position regarding the investigative subpoena; the source of authority on which it bases its actions is clear; and there is no question but that it will seek to enforce the subpoena pursuant to 15 U.S.C. § 49. Considering the manner in which the *Abbott Laboratories* majority viewed the available statutory penalties for noncompliance, 15 U.S.C. § 50, there is arguably a hardship on plaintiff if plaintiff ultimately refuses to comply with the subpoena request. More importantly, the Commission may also suffer hardship if plaintiff seeks to enjoin the subpoena by an action similar to the one filed here in other federal district courts.[10]

The Court's consideration of the propriety of declaratory and injunctive relief is thus limited to a single inquiry: when an investigative proceeding has been commenced by an agency after the institution of an adjudicative proceeding, does the agency violate due process and regulatory procedural rights of an adjudicative respondent, also a subject of the investigation, by issuing a subpoena duces tecum to it or any entity which might possess information about its operations, which requires production of documented information that is arguably material to the earlier-convened adjudicative proceeding?[11]

what the agency's position was on the regulations in issue there; (2) when the companies involved would be required to comply; and (3) whether prompt determination of the agency's authority to promulgate the regulations in question was possible on the available record. 387 U.S. at 163, 87 S.Ct. 1507.

10. That venue is proper to bring this type of action in various courts of the United States is not at all certain. Plaintiff invoked 28 U.S.C. § 1391 as the statute making venue proper in this Court. But on the face of plaintiff's complaint, 28 U.S.C. § 1391 would not seem to apply: (1) § 1391 (b) does not apply because not all of the defendants named in the complaint reside in the Southern District of Texas; (2) § 1391 (c) does not apply because both corporations and a United States agency (and its officers) are parties; (3) § 1391(e) does not apply because not all of the defendants named in the complaint are officers of a United States agency.

Even if the complaint is viewed with the corporate defendants deleted in the absence of a justiciable case or controversy as to them, § 1391(e) would still not apply in this case. None of the four places where the action may be brought under § 1391(e) is the Southern District of Texas: (a) no agency defendant resides here; (b) the cause of action did not arise here; (c) no real property is involved in this action; and (d) plaintiff does not reside here for purposes of venue because plaintiff was not incorporated in this State.

While § 1391(c) makes the proper venue of a corporation sued any judicial district in which it is licensed to do business, the courts have unanimously held that such a definition of residence does not apply to corporate plaintiffs, and venue as to them is proper only in the district(s) in which they were incorporated. *American Cyanamid Co. v. Hammond Lead Products, Inc.*, 495 F.2d 1183, 1185 (3rd Cir. 1974); *Manchester Modes, Inc. v. Schuman*, 426 F.2d 629 (2d Cir. 1970). The Supreme Court expressly declined to rule upon this issue in *Abbott Laboratories v. Gardner*. *See* 387 U.S. at 156 n. 20, 87 S.Ct. 1507.

Despite the probable absence of proper venue in this district, defendants have raised no objection at this time, and the Court will proceed to rule on the issues presented.

11. The Court emphasizes the limited nature of the inquiry on the merits exercised in this case. The Court still is of the opinion that the case is probably not ripe for review insofar as the issues are framed in plaintiff's complaint and supporting memoranda. However, stripped of allegations of agency conduct taken in bad faith during the investigation and potential illegal actions by agency counsel during pretrial procedures in the *Exxon* adjudicative proceeding, plaintiff's complaint presents the narrow, arguably justiciable, question framed above.

## VI. PROPRIETY OF INJUNCTIVE OR DECLARATORY RELIEF

■■ Granting or denying a preliminary injunction rests within the discretion of this Court. 11 Wright & Miller, Federal Practice and Procedure: Civil § 2948, at 427 (1973). The factors to be considered in determining whether preliminary injunctive relief is appropriate are: (1) whether the plaintiff is likely to prevail on the merits; (2) whether the plaintiff is in danger of suffering irreparable harm; (3) whether the potential harm to the defendants from issuance of the injunction outweighs the possible harm to the plaintiff if injunctive relief is denied; (4) whether issuance of a preliminary injunction will serve the public interest. *Blackshear Residents Organization v. Romney*, 472 F.2d 1197 (5th Cir. 1973).

Applying this test to the facts and arguments now before the Court, the Court concludes that no preliminary injunction should issue and that plaintiff is not entitled to declaratory relief.

■ It is well settled that the investigative power of the FTC, exercised pursuant to § 6 of the Federal Trade Commission Act, 15 U.S.C. § 46, is very broad. *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). The United States Court of Appeals for the Fifth Circuit has held that the FTC may conduct investigations and adjudications simultaneously. *Genuine Parts Co. v. F.T.C.*, 445 F.2d 1382, 1388 (5th Cir. 1971) *citing Lehigh Portland Cement Co. v. F.T.C.*, 291 F. Supp. 628 (E.D.Va.1968), *aff'd per curiam*, 416 F.2d 971 (4th Cir. 1969).

■■ In the *Genuine Parts* case, the Court of Appeals delineated the different functions served by investigative and adjudicative proceedings. The investigation has been likened to the search by a grand jury for information, *cf. Sutro Bros. & Co. v. S.E.C.*, 199 F. Supp. 439 (S.D.N.Y. 1961), and the FTC may pursue production of information by subpoena. *F.T.C. v. Tuttle*, 244 F.2d

605, 609 (2d Cir.), *cert. denied*, 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436 (1957). The adjudication tests such evidence as results from an investigation upon a record in an adversary proceeding before an independent hearing examiner. *Genuine Parts Co. v. F.T.C., supra*, 445 F.2d at 1388. A party to an adjudicative proceeding is afforded the protection of the due process clause of the Fifth Amendment. *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). Information which is produced during an investigative proceeding may be used by the Commission in any adjudicative proceeding which may result.

The regulations of the FTC authorize the use of information gleaned from an investigation during an adjudicative proceeding. 16 C.F.R. § 3.43(c). Plaintiff essentially attacks the validity of this regulation. In doing so, plaintiff also attacks the propriety of the institution of an investigation on one subject after an adjudicative proceeding has commenced on a different, though arguably related, subject. To this end, plaintiff's due process argument logically points to the conclusion that the authority of the FTC, as an investigative agency, must be restricted as to subject matter and scope where the agency attempts to glean information from an investigatee which is also a respondent, and from any organization which may possess information generated by, or pertaining to, that respondent.

■ The Court concludes that 16 C.F.R. § 3.43(c) is valid and should be upheld. The FTC investigation will not be halted at this stage solely because of the simultaneous occurrence of adjudicative and investigative proceedings. *Genuine Parts Co. v. F.T.C., supra*. There is nothing in the record to suggest any irregularity in the manner in which the investigation is being conducted, and the FTC actions are entitled to a presumption of regularity. *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); *United States v.*

*Chemical Foundation*, 272 U.S. 1, 47 S. Ct. 1, 71 L.Ed. 131 (1926). From an examination of the present record it is apparent that the boundaries of the broad framework provided by the Congress within which the FTC is to conduct this study of the energy industry have not been violated.

■ The mere pendency of an adjudicative proceeding does not establish a cordon sanitaire of permissible discovery, impeding the progress of any other proceeding in its path. Clearly, the authority of the agency to utilize information derived from an investigation in a subsequent adjudication, *United States v. Litton Industries, Inc.*, 462 F.2d 14 (9th Cir. 1972), defeats a suggestion of the total sanctity of adjudicative discovery. Plaintiff as an adjudicative respondent is entitled to due process during the pendency of the *Exxon* proceeding, but such due process is not violated, nor are its safeguards diminished, solely because an investigation is subsequently commenced on a related subject.

■ The interdependence of business entities in our economy and the interrelation of many types of business transactions which are subject to regulation and review by agencies substantially reduce those areas of inquiry which are so isolated as to have no effect on other markets, companies or transactions. Once an adjudicative proceeding begins, the FTC is presumed to abide by its regulations and should not thereafter be restricted to investigating only totally distinguishable industries or compa-

nies which have no relation whatsoever to any adjudicative respondent.[12] *Anheuser-Busch, Inc. v. F.T.C.*, 359 F.2d 487 (8th Cir. 1966).

## VII. CONCLUSION

■ No injunctive relief is proper at this time. Cf. *F.T.C. v. Waltham Watch Co.*, 169 F.Supp. 614 (S.D.N.Y. 1959). On the basis of principles established by the United States Court of Appeals for the Fifth Circuit, *Genuine Parts Co. v. F.T.C., supra*, 445 F.2d 1382, and other Courts of Appeals, *e.g., United States v. Litton Industries, Inc., supra*, 462 F.2d 14, plaintiff is not likely to prevail on the merits of this case. Plaintiff will not now suffer irreparable harm because it is under no present duty to comply. There would be substantial potential harm to the agency defendants, to the Congressional mandate at issue, and to the public interest if plaintiff's requested injunction were issued at this time. The motion for preliminary injunction is therefore denied. The motion for declaratory relief is also denied.

## ON MOTION FOR INJUNCTION PENDING APPEAL

Plaintiff's Motion for Injunction Pending Appeal is denied. On July 3, 1975, this Court entered an order denying plaintiff's motions for injunctive and declaratory relief. Since plaintiff filed suit only to seek to enjoin attempts at compliance with investigative subpoenas duces tecum, the Court also entered

---

12. The investigative authority of the FTC and, concomitantly, the power of Congress to order such investigations, would be severely reduced if plaintiff's argument were to be enforced to its logical conclusion. Plaintiff's suggested interpretation of administrative procedure would be that no company could be investigated if it possessed any information which could possibly have relevance to activities of any company currently involved in an adjudication. Joint venturers would conceivably fall within plaintiff's protected group, as would suppliers, manufacturers, and custom-

ers of plaintiff, since all of these entities on the vertical scale of those businesses in the natural gas industry may possess business records revealing information about plaintiff.

Also, an agency such as the FTC would be precluded from conducting any investigation which arguably overlapped with an already pending adjudicative proceeding, since a request for information of appropriate breadth during the investigation would overlap areas of information pertinent to the adjudication. Such a result cannot have been contemplated by the Congress.

a final judgment on that date. Plaintiff has now moved, pursuant to Fed.R.Civ. P. 62(c), to enjoin enforcement of this Court's order and final judgment pending appeal to the United States Court of Appeals for the Fifth Circuit. On the record now before this Court, and in view of standards which have been enunciated by the Court of Appeals to be applied to motions of this type, *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685 (5th Cir. 1968), the Court concludes that no injunction pending appeal should issue.

As the Court of Appeals and the commentators have noted, the governing considerations in a motion filed pursuant to Rule 62(c) are: (1) that the applicant make a strong showing that it is likely to succeed on the merits of the appeal; (2) that the applicant establish that unless a stay is granted it will suffer irreparable injury; (3) that no substantial harm will come to other interested parties; and (4) that a stay would do no harm to the public interest. 11 Wright & Miller, Federal Practice and Procedure: Civil § 2904 at 316 (1973); *Belcher v. Birmingham Trust National Bank, supra*; *Blackshear Residents Organization v. Romney*, 472 F.2d 1197 (5th Cir. 1973).

The Court of Appeals in the *Belcher* case made clear that granting an injunction pending appeal is an extraordinary remedy. 395 F.2d 685. Such relief should be sparingly granted. *F.M.C. v. New York Terminal Conference*, 373 F. 2d 424, 426 (2d Cir. 1967).

The equities preponderate strongly against the applicant in the instant motion. The Court made this identical determination on July 3 in deciding whether a requested injunction should issue at that time. Since the request for injunction at this time arguably interjects additional considerations, including maintenance of the status quo, the Court re-evaluates the four criteria

in this context. In this case, the Court was confronted with a complaint against the Federal Trade Commission ("FTC") and its members, and against three corporations which are joint venturers with plaintiff in "CAGC", a joint venture organized for the purpose of conducting offshore explorations for natural gas. The Court held: (1) that there was no justiciable case or controversy between plaintiff and the three corporate defendants; (2) that the Court could not find a justiciable case or controversy between plaintiff and the remaining defendants because of problems with standing and ripeness, but that out of an abundance of caution in view of *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Court, for purposes of resolving whether an injunction should issue, would reach the merits of a limited question framed on page 16 of its opinion of July 3, *see* Memorandum and Opinion of the Court (July 3, 1975), at 14, *supra*; and (3) that an evaluation of this limited inquiry caused the Court to conclude that plaintiff was not entitled to injunctive or declaratory relief.

The Court determined at that time, and continues to hold, that plaintiff is not likely to prevail on the merits, that substantial harm will be worked upon defendants and upon the public interest if an injunction were to be issued, and that no irreparable injury will be worked upon plaintiff. Viewing such findings against the backdrop of the considerations prompted by the instant motion, this Court holds that the decision rendered in the July 3 opinion is to continue in full force and effect.

The Court further concludes that no injunction is necessary to preserve the status quo. The Court outlined in detail the judicial and administrative remedies available to plaintiff in contesting the agency action challenged in the instant case, the issuance of an investigative subpoena duces tecum during the pen-

dency of an adjudicative proceeding in which an investigatee was involved. *See* 16 C.F.R. §§ 3.31–3.39; 15 U.S.C. § 49. Indeed, the availability of these remedies caused the Court to have serious reservations about the issues of standing to sue and ripeness for adjudication. Such remedies continue to operate with full force in the context of protecting those constitutional and procedural rights to which plaintiff is entitled as an adjudicative respondent. Plaintiff is under no present duty to comply with the instant subpoenas; if a court of the United States, pursuant to 15 U.S.C. § 49, determines that plaintiff should comply, plaintiff will still have the opportunity to contest any pretrial improprieties in the conduct of discovery in the adjudicative proceeding before the Administrative Law Judge presiding over that proceeding. Similarly, even if this Court is found to have decided incorrectly the issue of justiciable case or controversy between plaintiff and the three corporate defendants, the fact of compliance by those three corporations will still not work to prejudice plaintiff. The presence of administrative protections will continue to operate and be at plaintiff's disposal if agency improprieties surface or are even suspected.

The Court emphasized in its opinion of July 3, and it reiterates here, the hypothetical nature of the thesis upon which plaintiff bases its complaint and its request for an injunction pending appeal. Because such a rationale does not persuade this Court that plaintiff is entitled to injunctive relief at this stage, and because maintenance of the status quo is not a compelling consideration in this case as it has been in others, *cf. J. Weingarten, Inc. v. Potter,* 233 F.Supp. 833 (S.D.Tex.1964), the Court concludes that plaintiff's motion should be, and it hereby is, denied. *See Bayless v. Martine,* 430 F.2d 873, 879 (5th Cir. 1970); *cf. Crown Zellerbach Corp. v. F.T.C.,* 156 F.2d 927 (9th Cir. 1946).