FEDERAL TRADE COMMISSION

v.

ATLANTIC RICHFIELD COMPANY
et al., Appellants.

No. 76–1056.

United States Court of Appeals,
District of Columbia Circuit.

Argued 18 March 1977.

Decided 25 July 1977.

Robert E. Jordan III, Washington, D. C., with whom Henry B. Weaver, Robert M. Goolrick, Edward E. Vaill, Los Angeles, Cal., and Steven H. Brose, Washington, D. C., were on the brief, for appellants.

W. Baldwin Ogden, Atty., F. T. C., Washington, D. C., with whom Gerald P. Norton, Deputy Gen. Counsel, Gerald Harwood, Asst. Gen. Counsel, and L. Jorn Dakin, Atty., F. T. C., Washington, D. C., were on the brief, for appellee.

Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

Opinion filed by Circuit Judge SPOTTS-WOOD W. ROBINSON, III, concurring in part and dissenting in part.

WILKEY, Circuit Judge:

This appeal is from an order of the District Court (Green, J.) of 24 November 1975 commanding Atlantic Richfield Company to comply with a subpoena *duces tecum* issued by a member of the Federal Trade Commission investigative staff, and from other ancillary orders. For the reasons which follow, we reverse and remand the case to the District Court with instructions to remand further to the Federal Trade Commission for proceedings as outlined herein and not inconsistent with this opinion.

## I. PROCEDURAL BACKGROUND

Basic to our action here is the fact that there are two proceedings being carried on simultaneously by the Federal Trade Commission. Chronologically, the first arises from a 1973 complaint styled *In the Matter of Exxon Corporation, et al.*[1] This is an *adjudicative* proceeding and is now and has been for some time in the hands of an Administrative Law Judge. The second is an *investigative* proceeding pursuant to an FTC resolution authorizing its staff to gather information on the structure, conduct, and performance of the natural gas industry.[2] This was launched on 13 March 1975 by four subpoenas *duces tecum* issued by a member of the FTC investigative staff to appellant Atlantic and three others, Continental Oil Company, Getty Oil Company, and Cities Service Company (CAGC companies). The adjudicative proceeding rests on a complaint alleging violations of the antitrust laws; the investigative proceeding is an energy study called for by Congress. Although Atlantic is the only named party common to both proceedings, it is agreed that the two proceedings will necessarily cover much of the same ground, particularly in regard to the existence and operation of joint ventures among the four companies. Since Atlantic is the only one of the four CAGC companies named as a defendant in the *Exxon* adjudicative proceeding, it is only Atlantic which has concerned itself with the *procedure* by which documentary material obtained in the energy study investigation will be used in the *Exxon* adjudicative proceeding; that concern logically extends not only to documents obtained from Atlantic itself, but also to material derived from the other three companies, to the extent the prosecutorial staff in the *Exxon* proceeding is to have access to it.

Without detailing the exact procedural ploys of each party in the earlier rounds of legal combat before the Trade Commission, in the United States District Court for the Southern District of Texas, and in the Fifth Circuit, it is sufficient for this appeal to make clear that the principal issue centered around the repeated efforts of Atlantic to segregate and sequester documents obtained by the FTC by the power of its investigative subpoena, to keep them from being furnished to the prosecutorial staff in the adjudicative proceeding without the Administrative Law Judge and defendant Atlantic pursuant to the rules of the FTC itself, being given the opportunity respectively to pass upon and object to the acquisition of documents by the FTC prosecutorial staff. Atlantic maintains that it has not sought to block the subpoenas in the investigative proceeding—indeed, as a result of the decision of the United States District Court for the District of Columbia, Atlantic and the other three companies have complied completely and furnished all documents called for to the investigative staff—but, rather, Atlantic has sought and is still seeking to separate the investigative and adjudicative proceedings, at least to the extent that the adjudicative proceeding will go forward under the normal FTC rules of discovery and evidence.

Atlantic's initial step on 4 April 1975 was to file with the Commission itself a motion either to quash each of the four subpoenas or, alternatively, to issue an order precluding any FTC complaint counsel staff member participating in the prosecution of the pending *Exxon* adjudicative proceeding

---

1. FTC Docket 8934.

2. FTC File No. 741–0019.

from having access to any documents or information obtained through the challenged investigative subpoenas, except by the usual required application to the Administrative Law Judge in the adjudicative proceeding.[3] In support of this motion Atlantic presented two arguments to the Commission. First, Atlantic contended that the use of the investigative subpoena material in the adjudicative proceeding would be violative of procedural due process as guaranteed by the Fifth Amendment to the United States Constitution.[4] Although this due process argument concerns us, and we take note of it in a later stage of our analysis,[5] it is Atlantic's second argument which is of central concern to us. This second argument is premised on the contention that the FTC's procedural rules, as promulgated by the Commission itself, prohibit access by the prosecutorial staff to the documents obtained through the investigative subpoena. The nature of Atlantic's argument in this regard is important to the disposition of this case.

In making its argument with respect to the FTC rules, Atlantic does not point to a specific rule which it believes prohibits the transfer of documents from the investigative staff to the prosecutorial staff. Rather, Atlantic's argument is grounded on the *structure* and *scheme* of the Commission rules. The Commission has, in stating its rules of practice, clearly separated the rules relating to nonadjudicative procedures (such as investigations) from those dealing with adjudicative proceedings. In these separate sets of rules, the Commission has established independent mechanisms for discovery in investigative and adjudicative proceedings which differ from each other in substantial degree. Atlantic contends that the Commission's prosecutorial staff must operate entirely within the framework of the prescribed adjudicative rules of practice in conducting discovery for an adjudicative proceeding. That is, Atlantic believes that the structure of the rules, and not any particular rule, compel the conclusion that the prosecutorial staff is *not* legally free to obtain documents from the investigative staff outside the normal channels of adjudicative discovery.[6]

In a letter to Atlantic's counsel on 12 May 1975, the Commission denied Atlantic's motion. In so doing, the Commission pointed out that the energy study was initiated in good faith (unquestioned by Atlantic here)[7] and, further, that there is

> no reason to suppose that the Administrative Law Judge presiding over the *Exxon* proceedings would receive into evidence any documents which had been obtained by way of irregular, "backdoor" discovery, rather than through ordinary discovery channels . . . [T]he Commission necessarily exercises both investigatory and adjudicative duties and is entitled to the presumption that it will not rely on extra-record evidence in deciding cases.

> \* \* \* \* \* \*

> In light of all the circumstances, the substantial administrative burden which would be occasioned by sequestering information within groups of staff attorneys engaged in Commission activities is unwarranted.

> \* \* \* \* \* \*

The resolution pursuant to which the subpoenas duces tecum were issued does not

---

3. Motion by Atlantic Richfield Company to quash or limit subpoenas duces tecum, with memorandum in support, Exhibit A, and certificate of service, in the matter of the Atlantic Richfield Company, et al., file number 741–0019.

 This document was not included in the Joint Appendix presented by the parties to this court. Because of the importance of this docu-ment, the court requested the Clerk to secure a copy of the document from the FTC. This was done on 3 June 1977.

4. *Id.*

5. See text following note 15, *infra.*

6. Motion by Atlantic, *supra* note 3.

7. J.A. at 24.

authorize or invite the use of investigative subpoenas for discovery in [the *Exxon* proceeding]. While the resolution does reserve the Commissions' right to use subpoenaed material in connection with particular law enforcement investigations, the *Exxon* proceeding is plainly not an investigative matter.[8]

■ Two points need to be made concerning the Commission's response to Atlantic's motion of 4 April 1975. First, the response is ambiguous. Although the result itself, taken alone, could easily be read to stand for the proposition that transfer between the investigative and prosecutorial staffs is in no way prohibited, there is language in the response to indicate a more cautious approach which closely resembles the relief requested by Atlantic. Because of this ambiguity, we have no clear and definitive expression from the Commission concerning this very important issue. Although the Commission itself has been ambiguous in dealing with this issue, we have no doubt as to the position taken by FTC counsel before this court. It is beyond doubt that FTC counsel here are now asserting that the subpoenaed documents from the energy study investigation will be turned over to the prosecutors in the *Exxon* adjudicative proceeding, without notice to Atlantic and without permission of the Administrative Law Judge. FTC counsel's argument to this court orally and in brief, was based on the thesis that there exists no bar whatsoever to this transfer.[9] In the light of these representations, it appears virtually certain that there will be free transferability in the *Exxon* proceeding with respect to the materials obtained through the investigative subpoena. Thus, the ambiguity and lack of clarity in the Commission's official position as expounded

in the letter to Atlantic's counsel weighs heavily in our decision to remand. Just as we may not rely on the post hoc rationalizations by counsel to justify agency action, we cannot rely on counsel's clearer and more comprehensive statements of its conception of agency policy as the definitive expression of agency intentions.

■ The second point with respect to the FTC's response to Atlantic's motion concerns the grounds on which the Commission based its denial. As noted, *supra*, the Commission rested its decision on the grounds that the sequestration of documents would constitute an unacceptable administrative burden. Thus, in taking this action, the Commission did not rely on its own rules, nor did it attempt to refute the argument presented by Atlantic with respect to the overall structure of the rules. While the Commission may indeed have a valid point in mentioning the administrative burdens which would attend Atlantic's requested relief, this basis for decision does little to guide us in determining whether Atlantic has been afforded its rights under the rules as promulgated and interpreted by the Commission.

The major point to be drawn from this discussion of Atlantic's motion of 4 April 1975 and the Commission's response of 12 May 1975 is that we, as a reviewing court, have not, as a result of this interchange, been provided with an interpretation of the FTC's rules of procedure as they relate to the issues before this court in this litigation. Rather, we are left only with an ambiguous and unclear statement of the agency's position which is based on a prudential concern for the administrative difficulties inherent in complying with Atlantic's request. As will become clearer at a later point in the

---

8. *Id.*

9. "There is no merit to Atlantic's claim that the Commission . . . may not use them for adjudicative proceedings." FTC Brief 22. Further, the FTC's rules do not prevent "permitting complaint counsel to use them in pending

adjudicative proceedings against Atlantic." *Id.* at 25. And, Atlantic cannot defend against "investigative subpoena on the ground that some of the evidence may be used in that [Exxon adjudicative] proceeding." *Id.* at 30. This interpretation is consistently asserted also at p. 24 n.19, p. 26 n.23, p. 29 n.24.

analysis, this is simply not a sufficient predicate on which to review the major points raised by Atlantic before this court.

Acting on its own worst case interpretation of the Commission's language in its statement of 12 May 1975, an interpretation with which FTC counsel here certainly agree, on 3 June 1975 Atlantic filed an action in the United States District Court for the Southern District of Texas to block enforcement of the investigative subpoenas, at least until some kind of protective order could be entered segregating and sequestering the documents obtained in the investigative proceeding, preventing their use in the adjudicative proceeding except under the FTC adjudication rules. In the Houston action the FTC maintained that the proper forum for the adjudication of all issues raised would be the district court in which the FTC would file its action for subpoena enforcement, rather than in any extraordinary pre-enforcement proceeding such as Atlantic had filed.[10] The Houston action was speedily dismissed.[11]

While Atlantic's appeal to the Fifth Circuit was pending, on 19 September 1975 the FTC, consistent with its position in the Houston court, filed four separate actions in the United States District Court for the District of Columbia asking judicial enforcement of the investigative subpoenas against the four CAGC companies. Atlantic filed defenses and counterclaims, raising issues similar to those in the pre-enforcement action in Houston, including a motion for a stay on the ground that the issues were then before the United States Court of Appeals for the Fifth Circuit. Pursuant to stipulation of the parties, an order was entered rescheduling the hearing date in each of the actions for 25 November 1975. At approximately 4:30 p. m. on 24 November 1975 Atlantic counsel was informed by the District Clerk's office that the hearing scheduled had been cancelled by the District

Judge, because the District Judge had already entered identical orders enforcing the subpoenas against the four companies, as well as ancillary orders, including denial of a stay pending Fifth Circuit disposition of the Houston action.

When the Fifth Circuit decision appeared on 4 February 1977, it approved the dismissal of the Houston action on the ground that the proper forum was in the District Court in the District of Columbia where the enforcement orders were being sought. In so doing the Fifth Circuit stated,

> The legal remedies outlined in [*Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964)] seem entirely adequate to protect Atlantic from the anticipated harm. Like the IRS summons considered in *Reisman*, FTC subpoenas were not self-executing and may only be enforced by a district court. Atlantic may raise all its due process and regulatory procedural objections in any enforcement proceeding brought against it. . . .
>
> We thus conclude that Atlantic had an adequate remedy at law through FTC enforcement actions and suffered no undue hardship in being remitted to that remedy by the District Court's denial of relief. . . .
>
> . . . [W]e also find that Atlantic will suffer no undue hardship from denial of judicial relief outside the enforcement proceedings. Atlantic may not be forced to comply with the subpoenas nor subjected to any penalties for noncompliance until ordered to comply pursuant to appropriate enforcement proceedings in which Atlantic may assert its due process objections.[12]

By the time the Fifth Circuit opinion issued, Atlantic was either in the process of compliance or had already fully complied with the District Court enforcement order of 24 No-

---

**10.** *See Atlantic Richfield Company v. FTC*, 398 F.Supp. 1, 10–12, 17–18 (S.D.Texas, 1975).

**11.** *Id.* at 1.

**12.** *Atlantic Richfield Company v. FTC*, 546 F.2d 646 (5th Cir., 1977).

vember 1975; at oral argument on 18 March 1977 Atlantic stated that all four companies had fully complied and thus had furnished all documents to the FTC investigative staff.

## II. THE FEDERAL TRADE COMMISSION'S PROCEDURAL RULES

■ It is recognized that the Federal Trade Commission and the other regulatory agencies have two separate functions to perform, investigative and adjudicative. It is also recognized that the regulatory agencies have an obligation to keep those roles separate insofar as is possible, in order to insure the judicial fairness of adjudicative proceedings and also the unrestricted vigor of investigative proceedings. Indeed, such confidence as the public and the courts have in the integrity of the FTC and other agencies' adjudicative processes may be said to rest in great part on their effort and success in keeping separate these two diverse functions.

The FTC argues here that the transfer of documents from the investigative staff to the prosecutorial staff in an adjudicative proceeding already launched, without notice to the defendants or to the Administrative Law Judge in the adjudicative proceeding, is permissible and it is indeed authorized by the FTC rules, if the investigation itself is bona fide, i. e., not launched under some pretext merely to gather evidence for use in an adjudicative proceeding. Atlantic vigorously disputes this, saying that the FTC's

own rules indicate that the evidence gathered in the two separate proceedings should be kept separate, and that indeed there is no precise precedent for what the FTC is attempting here, although the FTC has argued otherwise.[13]

There is no question of the good faith of the initiation of the 1975 investigative inquiry, nor of the validity of the FTC investigative staff's subpoenas, nor of the use in full by the FTC investigative staff of the documents already acquired.

■ In Part 3 of the Commission's Rules, which deal with the procedures applicable to adjudicative proceedings, there is a rule which relates to the issue now before us. Section 3.43(c) provides that:

> Any documents, papers, books, physical exhibits, or other materials or information obtained by the Commission under any of its powers may be disclosed by counsel representing the Commission when necessary in connection with adjudicative proceedings and may be offered in evidence by counsel representing the Commission in any such proceeding.[14]

In this court, Commission counsel have contended that Section 3.43(c) plainly empowers the investigative staff to turn over to the prosecutorial staff any materials it has lawfully subpoenaed, without regard to the amenities of adjudicative discovery. By our reading, this conclusion is possible but not inexorable; there are a variety of considerations which must go into an interpretation

---

**13.** See FTC Brief at 24 n.21. The FTC has referred us to three cases to support this argument. *See Mississippi River Corp. v. FTC*, 454 F.2d 1083, 1092 n.1 (8th Cir. 1972), *aff'g* 75 F.T.C. 813, 908 (1969); *United States Steel Corp. v. FTC*, 426 F.2d 592, 600 n.16 (6th Cir. 1970), *aff'g* 74 F.T.C. 1270 (1968); *Marquette Cement Mfg. Co.*, 75 F.T.C. 32, 98 n.25 (1969). In all three cases, the information generated by an FTC investigation and relied on in an adjudicative proceeding was an FTC Staff Report. Indeed, in all three cited cases, the *same* report was relied upon—*Mergers and Integration in the Cement Industry* (1966). We need not detail the numerous ways in which the FTC's cited authority differs from the case at bar.

We do feel it necessary to mention one basic difference, however. FTC staff Reports, such as the one referred to above, are published by the Trade Commission and are *public documents*. These public documents are by definition *not* concealed from the parties in an adjudicative proceeding. The distinction between the three cited cases and the case at bar is of the same magnitude as the difference between day and night. Rather than supporting the FTC's position, the cited authority underscores and supports the wisdom of the action we take here.

**14.** 16 C.F.R. § 3.43(c).

of this rule which could well lead to the opposite conclusion.[15] The point is that we as a reviewing court do not have the *agency's* interpretation of its own rule in this regard. The salutary and settled rule of administrative law is that the agency, and not the reviewing court, is to be accorded the first opportunity to construe its own regulations. Accordingly, we remand this case to the District Court with instructions to remand to the Commission for the purpose of a clear and definitive interpretation of 16 C.F.R. § 3.43(c).

■ We are particularly concerned that the consideration of section 3.43(c) on remand be vigorous, thoughtful, and complete. Our concern in this regard stems basically from two considerations. First, there is the need for a clear and definitive interpretation of all agency rules so that the parties upon whom the rules will have an impact will have adequate and proper notice concerning the agency's intentions. Such a need is particularly acute with respect to those rules, such as section 3.43(c), the operation of which can serve to generate consequences of a deeply serious nature.

■ The second reason for our concern emanates from the due process arguments raised by Atlantic in the course of these proceedings. We emphasize that we do not have before us the FTC's interpretation of section 3.43(c) and therefore we cannot state with certainty that the interpretation favored by FTC counsel in this case would be violative of due process. We are prepared to assert, however, that this area of inquiry—one which deals with such basic notions as notice and opportunity to be heard—inherently raises questions relating to due process and that this constitutional dimension must be kept in mind as the Commission proceeds to formulate its position on the meaning of section 3.43(c).

In order to ensure the type of comprehensive consideration of section 3.43(c) that we deem appropriate, we invite the Commission to consider fully and in detail the arguments raised by Atlantic Richfield during the course of these proceedings. As a further aid in defining issues which should be dealt with by the Commission, at this point we shall put forth various plausible arguments in support of the construction of the FTC rules opposed by Commission counsel in this case. This technique is designed to stimulate the consideration on remand; it is not intended to dictate the result the Commission must reach.

We believe that there is a persuasive argument to be made that the structure of the FTC procedural rules indicates that the prosecutorial staff (complaint counsel) in the adjudicative proceeding should not be allowed access to those documents now in the hands of the investigative staff without compliance with the FTC's own rules of discovery and subpoena in the adjudicative proceeding. To accept the FTC counsel's argument here would seemingly tend to undercut the role of the Administrative Law Judge in any adjudicative proceeding. The argument can also be made that it would encourage surreptitious interchange of documents, would encourage in the future investigative actions without the bona fides which attach to this particular investigation, and in general would subvert completely the essential separation of the adjudicatory and investigatory functions of the Federal Trade Commission and, by analogy, of the other regulatory commissions.

Turning now to the FTC Rules, we find it highly significant that the subpoena power and subsequent use of its product for adjudicative and nonadjudicative proceedings are governed by two entirely separate Parts of the Rules. The officials responsible are also different. "Part 2—Nonadjudicative Procedures, Subpart A—Investigations" provides for investigative subpoenas under "§ 2.7 *Subpoenas in investigations.*"[16] In nonadjudicative proceedings the investigative bureau staff issues compulsory process,

---

**15.** See text and notes at notes 16 to 21, *infra.*

**16.** 16 C.F.R. § 2.7.

such as was done here under the Commission authorizing resolutions, without securing further permission from the Commission or from any other authority. Under section 2.7 subpoenas are the responsibility of the investigative officials of the Commission or the Commissioners themselves, and "all motions to limit or quash any investigational subpoenas shall be ruled upon by the Commission itself."

On the other hand, "Part 3—Rules of Practice for Adjudicative Proceedings, Subpart D—Discovery; Compulsory Process" paints quite a different picture. Under "§ 3.33 *Depositions*,"[17] only "the Administrative Law Judge in his discretion may order the taking of a deposition and the production of documents by the deponent." Further, "any party desiring to take depositions shall make application in writing to the Administrative Law Judge, setting forth the justification therefor, . . ." Under "§ 3.34 *Subpoenas*,"[18] "application for issuance of a subpoena . . . to produce specified documents . . . shall be made in writing to the Administrative Law Judge and shall specify as exactly as possible the material to be produced, showing the general relevancy of the material and the reasonableness of the scope of the subpoena." In contrast to the investigative subpoenas governed by Part 2 of the FTC procedural rules, where a subpoena under "Part 3—Rules of Practice for Adjudicative Proceedings" is involved, "any motion to limit or quash such subpoena shall be filed within ten days after service thereof or within such other time as the Administrative Law Judge may allow" and such motion is ruled upon by the Administrative Law Judge. The rule further states, "Subpoenas duces tecum may be used by any party for purposes of discovery . . . ,"

indicating that both the FTC complaint prosecutorial counsel and defendant's counsel are governed by the same rules of discovery. On this latter there would be no dispute here, if only adjudicative proceeding subpoenas were involved.

The FTC counsel urges that section 3.43(c) authorizes the transfer, without notice to either the Administrative Law Judge or the defendant party, of information obtained in any fashion by any other part of the Commission's activities to the prosecutorial complaint staff in an adjudicative proceeding.

 Such an interpretation would appear to be inconsistent with all the rest of Part 3, Subpart D, which endeavors to create for the Administrative Law Judge control over the adjudicatory process, including all aspects of discovery, and to make the FTC adjudicatory process as fair to each side in every respect as in a federal court. Secondly, the literal words of this particular rule do not mention transfer from one branch of the FTC to the other, but, rather, seem merely to provide or authorize the offering in evidence and the public disclosure of information obtained by any means. The phraseology does not indicate that the Administrative Law Judge is to be bypassed, for the free and unauthorized transfer from one branch of the FTC to another would appear to negate all the authority and responsibility of the Administrative Law Judge, all the notice and opportunity to object, which is the object of the preceding portion of Part 3 re adjudicative proceedings.[19]

It is instructive to compare the FTC adjudicative proceeding rules with the rules of civil or criminal procedure for the federal courts. In a civil proceeding a subpoena

17. 16 C.F.R. § 3.33.

18. 16 C.F.R. § 3.34.

19. It is instructive to compare here the careful procedure now followed by the Antitrust Division of the Department of Justice in handling both civil and criminal matters. At some time in the past there were allegations that the Antitrust Division was utilizing criminal grand jury investigations, conducted subsequent to the initiation of a civil complaint against a party, to

gather evidence for use in the civil case. Whether the allegations were true or not, such utilization of the criminal investigative processes of the grand jury for use in a civil case in the federal district court would have been highly improper. It would have been highly improper because the federal district judge would have been deprived of his control over the discovery process in his own court, and the party defendant would have been de-

*duces tecum* is drawn by the interested party in the form prescribed by the court, and issued on the authority of the clerk of the court.[20] The return of the subpoena is a matter of public record in the clerk's office. This corresponds to the application for subpoena to the Administrative Law Judge required under section 3.34 of the FTC "Part 3. Rules of Practice for Adjudicative Proceedings." In criminal proceedings in the federal district court, the subpoena secured by the prosecutor is a matter of public record in the clerk's office.[21] Any alert person who suspects that he might be the target of a grand jury investigation may have his counsel examine the clerk's office record. In a criminal case after indictment and before trial the defendant has ample notice by the same returns being filed in the clerk's office of the witnesses and documents subpoenaed by the prosecution. In addition, although not required by the rules, practice in most federal district courts is to require the prosecution to list in advance the witnesses it will call, and so to inform the court and the defendant. Current pre-trial practice in almost every district achieves the same goal of full disclosure to each side of the witnesses and documents to be relied upon by the other.

In each instance it should be emphasized that the subpoena is the subpoena of the court, not the subpoena of the interested party. It is the court which must authorize, and under the rules does without question in routine matters, the issuance of the subpoena, and it is the court which must pass upon motions to quash or limit the subpoenas, whether in criminal or civil cases. And so it is with the Administrative Law Judge under the rules in adjudicative proceedings of the Federal Trade Commission. The subpoena is the subpoena of the Administrative Law Judge. It must be approved by him, and motions to quash or limit will be heard and passed on by him. The scheme of the rules, as we read them, is that no discovery will take place without the approval of the Administrative Law Judge. This is similar to the practice in the federal district courts, where because of notice in the clerk's office in both criminal and civil cases opportunity is afforded to the interested or aggrieved parties at an early stage to move the court to quash or modify the subpoenas already issued.

The opportunity to quash or modify a subpoena before it is enforced is a right most distinct and far different from being permitted to object to evidence when it is first offered in the courtroom at trial. Of course, in a civil or criminal trial in federal district court the opposing party has an opportunity to make objection to evidence when it is offered, but the defendant in a civil or criminal case or the subject of investigation before a grand jury also has an opportunity under the federal rules to move to quash or modify the subpoena originally before the evidence is even brought in to the opposing or prosecuting attorney.

The arguments advanced by Atlantic to support its position that the prosecutorial staff in the *Exxon* proceeding should not have access to the materials obtained through the mechanism of the investigative subpoena, when considered in conjunction with the concerns we have expressed above, provide the Commission with a set of queries and concerns which can serve as a

---

prived of any notice of the discovery process being conducted by the plaintiff Antitrust Division, all in violation of the Federal Rules of Civil Procedure. Allegations were made that the constitutional right to due process was thereby involved. Recognizing the merit of these objections, whether founded or not, the Antitrust Division thereafter has taken care not to conduct any criminal investigative proceedings before a grand jury which relate to civil cases already initiated in the district court, or, if such could not be avoided, to segregate the results of the grand jury investigation.

What the Antitrust Division of the Department of Justice has agreed would be thorough-

ly improper, a violation of the Federal Rules of Civil Procedure, and perhaps even an unconstitutional deprivation of due process, to do with its grand jury proceedings relative to its civil lawsuits is exactly what the FTC counsel are asserting is entirely correct for the FTC to do under its rules as FTC counsel interpret them. We cannot agree with FTC counsel; we think the Antitrust Division's procedure is correct, and indeed is called for by all applicable rules and canons of fairness and justice.

**20.** Fed.R.Civ.P. 45(a).

**21.** Fed.R.Crim.P. 17(a).

framework for the Commission's consideration on remand. The basic task for the Commission on remand is to provide an interpretation of its rules which preserves the balanced and fair effect which the rules for adjudicative proceedings are undoubtedly intended to produce. That task of interpretation will necessarily involve sensitivity to the procedural rights of the private parties as well as the promotion of the legitimate objectives of the agency. The resolution reached will, as we note in Part III *infra*, be subject to eventual judicial scrutiny in any review sought of the final order issued by the Commission in the adjudicative proceeding.

## III. RELIEF POSSIBLE AT THIS STAGE

 At oral argument it appeared that all four of the CAGC companies in the joint venture have complied fully with the investigative subpoena; this circumstance appears to moot all of the issues except that of the way the documents are now to be handled at the Commission.[22] It appears that the proper remedy at this stage is to remand this case to the District Judge with instructions to remand the case to the Federal Trade Commission for action in accordance with this opinion. The matter of FTC prosecutorial complaint counsel access to all material obtained by the investigative staff in the energy study will thus rest exclusively in the first instance in the hands of the Federal Trade Commission.

The decision of the Commission as to the interpretation to be accorded the FTC rules shall control the procedure employed in the *Exxon* adjudicative proceeding.[23] In order to prevent any possible prejudice to Atlantic, and to ensure that discovery in the *Exxon* proceeding proceeds according to the Commission's interpretation of the FTC rules, the prosecutorial staff of *In the Matter of Exxon Corporation, et al.,* FTC Dock-

**22.** This obviates the necessity of our passing judgment on the procedures in the District Court. We are informed that motions to enforce administrative agency subpoenas are assigned routinely to the motions calendar, which is handled for a designated period by a single judge. These subpoena enforcement proceedings must be adversarial in character and, as the Fifth Circuit noted, afford "an adequate *opportunity to raise all objections to* [the] administrative subpoena." *Atlantic Richfield Company v. Federal Trade Commission,* 546 F.2d 646, 650 n.5 (1977), citing cases. Depending on the circumstances of the case, this adversary proceeding may take the form of an evidentiary hearing, oral arguments without the taking of evidence, or, as is doubtless the appropriate course in many applications for enforcement orders, consideration based on the papers submitted by the parties to the court.

In this proceeding no party had filed a motion for judgment on the pleadings or for summary judgment. The U.S. District Court in Houston had declined to vacate, modify, or *restrict in any way the subpoenas or use of the* documents obtained, because in its view these issues properly would be litigated in an appropriate proceeding before the U.S. District Court in which enforcement of the administrative subpoenas was sought. The strenuous objections filed by Atlantic to the application for enforcement of the administrative subpoenas in the United States District Court for the District of Columbia represented the last chance that Atlantic and the other three companies had for a meaningful review of the issues raised. The

routine action of the trial judge here, on the eve of a hearing which had been stipulated between Atlantic and FTC would take place, and at which hearing Atlantic was planning to present evidence and thus did not file affidavits accompanying its pleadings, destroyed any opportunity for Atlantic to have its case heard by a court with full authority to effect a just disposition. We recite this simply by way of caution, lest in the future other judges and litigants be victimized by adherence to what often is a routine consideration of motions.

**23.** The Fifth Circuit, while declining to order its own District Court to grant Atlantic's requested relief, held open the possibility that this court could grant the requested relief. ". . . Atlantic may still be afforded some relief by an order to protect it from further disclosure, to require return of the subpoenaed documents, or to segregate them from the FTC adjudicative [prosecutorial] staff in the *Exxon* proceeding. See, e. g., *FTC v. Browning,* 140 U.S.App.D.C. 292, 435 F.2d 96 (1970). . . . Even if the D.C. district court failed, as Atlantic alleges, to grant the required adversary hearing in which Atlantic could adequately raise and argue its procedural objections to the subpoenas, we are unwilling to assume any default by the District Court will not be properly remedied on appeal by the D.C. Circuit.

"Furthermore, Atlantic may still enforce all of its due process protections in the *Exxon* adjudicative proceeding itself and in an appeal from any adverse decision." 546 F.2d 646, 650–51.

et 8934, is required to return immediately to the investigative staff in the energy study all documents and materials (including copies, notes, summaries, or abstracts thereof) which they hitherto have obtained not only from Atlantic but also from the other three CAGC companies.[24]

Subsequent to the Commission's interpretation of its rules, all the legal questions which Atlantic wishes to raise will be comprehended within the *Exxon* adjudicatory proceeding, and dealt with by the Administrative Law Judge in accordance with Part III—Rules of Practice for Adjudicative Proceedings of the FTC.

If Atlantic is dissatisfied with the Commission's construction of its rules, Atlantic can raise these claims in the context of an appeal from the final decision of the agency in the adjudicative proceeding. At that

time, the considerations leading us to remand in this case will not be present and a reviewing court can appropriately examine the contentions made by Atlantic, both statutory and constitutional, in light of the anticipated comprehensive interpretation placed on the FTC adjudicative rules by the Commission.[25]

All of the District Court orders in this case will be vacated and an appropriate order carrying out the directions in this opinion will be issued by the District Court.[26]

*So ordered.*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring in part and dissenting in part:

The question left unanswered by this subpoena-enforcement suit is whether access

---

Were it not for our concern over allowing the Commission to have the first opportunity to interpret its regulations, we may well have granted the requested relief with respect to the sequestration of documents.

In addition, as we point out subsequently (text following note 24, *infra*), Atlantic may indeed pursue its statutory and constitutional objections in an appeal from the final agency decision in the *Exxon* proceeding.

**24.** We think this is the prudent path to follow with the situation in the adjudicative proceeding at this stage. Atlantic's claim that its due process rights under the Fifth Amendment had been violated by the unnoticed transfer of the material from the investigative staff to the prosecutorial complaint counsel would remain in the case until the final appeal. If Atlantic's claim of a due process violation were sustained, then the whole proceeding would have gone for naught.

The Fifth Circuit, in *Atlantic Richfield v. FTC*, 546 F.2d 646, 651 (1977), made reference to this possibility:

If the FTC acts improperly or illegally in obtaining evidence for the adjudicative proceeding with investigatory subpoenas, Atlantic should be entitled to have any evidence so obtained—as well as its "fruits"—excluded from the proceeding or to obtain a reversal of any adverse judgment founded upon improperly admitted "tainted" evidence.

**25.** Our dissenting colleague disagrees with us on two points: the necessity in this investigative subpoena proceeding of requiring the Commission to enunciate clearly its interpretation of its own rules regarding the transfer of information from the investigative staff to the prosecutorial staff, and the necessity of sequester-

ing the documents obtained by the investigative subpoena prior to such ruling by the Commission. The answer to our dissenting colleague on both points lies in the realm of practicality.

Atlantic Richfield has already tried to get a ruling from the Commission on this question of transferability without notice, and the resulting letter of the Commission was ambiguous and unsatisfactory as a ruling on this point. (See text at notes 6–9). It is now necessary to direct the Commission to rule specifically, and deference to permitting a priority in the Commission's ruling is all the deference we owe the Commission at this time. As a practical matter, this is the only way Atlantic Richfield can get an authoritative ruling on this, because the Administrative Law Judge is not likely to make such a ruling following the unsuccessful effort by Atlantic to obtain it from the Commission directly.

As to the sequestration of the documents already obtained by the investigative subpoena, as a practical matter this is necessary because Atlantic would never know without such sequestration whether the prosecutorial staff was operating with the documents or copies thereof, or was operating with leads obtained from the documents to secure other evidence. Atlantic as a practical matter would never be in a position to know to what it wished to object, how to object, and when to object before the Administrative Law Judge, without the prior sequestration of the documents which we here order.

**26.** Nothing we do here affects the ongoing energy study investigative proceeding.

by the Commission's prosecutorial staff in the *Exxon* antitrust inquiry to documents lawfully subpoenaed by its investigative staff in the independent energy study is controlled by the Commission's rules governing discovery in adjudicative proceedings.[1] I agree with the court that resolution of that question must seek its genesis in administrative construction of the relevant regulations. I cannot, however, subscribe to the distortion of administrative and judicial practice that the court's remand occasions, or to the court's order sequestering the subpoenaed documents from the prosecutorial staff pending interpretation of the regulations. As to these two features of the court's decision, I must respectfully dissent.

## I

As the court more fully explains, the Commission has promulgated regulations establishing independent mechanisms for discovery in investigative and adjudicative proceedings, respectively.[2] Investigative subpoenas are issued by the Commission, its members and other designated officials,[3] subject only to limitation or quashing by the Commission itself.[4] On the other hand, the administrative law judge presiding over an adjudicative proceeding holds tight reins on any discovery sought therein.[5] Neither party challenges the validity of this model of the Commission's procedures; rather, they part company on the question whether the Commission's prosecutorial staff is legally free to obtain documents from the investigative staff outside the normal channels of adjudicative discovery.

In this court, Atlantic argues that the Commission's prosecutorial staff can gain access to the subpoenaed documents only by observing the procedures that the Commission has erected for discovery in adjudicative inquiries. And the fact is that the Commission has yet to decide whether its discovery rules foreclose automatic turnover of the documents.[6] Commission counsel, on the other hand, contend that Section 3.43(c) of the regulation[7] plainly empowers the investigative staff to release to the prosecutorial staff any materials it has lawfully subpoenaed, without regard to the amenities of adjudicative discovery. That conclusion is not nearly so evident to me, for countervailing considerations identified by the court[8] serve at least to generate some doubt as to whether Section 3.43(c) was intended to have that effect. Since an administrative agency is bound by the

---

1. At several points, the court alludes to due process problems assertedly lurking in the background. But see *Hannah v. Larche*, 363 U.S. 420, 445–446, 80 S.Ct. 1502, 1516–1517, 4 L.Ed.2d 1307, 1322–1324 (1960). Since the court does not elucidate the nature of these problems, I intimate no opinion as to whether this litigation has constitutional overtones.

2. Majority Opinion (Maj. Op.) Part II.

3. 16 C.F.R. § 2.7 (1977). Officials so authorized are "the Directors, Deputy Directors and Assistant Directors of the Bureaus of Competition, Consumer Protection, and Economics, and the Regional Directors and Assistant Regional Directors of the Commission's regional offices." *Id.*

4. *Id.*

5. See 16 C.F.R. §§ 3.31–3.36, 3.42 (1977).

6. Prior to institution of the present enforcement proceeding, Atlantic sought unsuccessfully to persuade the Commission to quash the investigative subpoena issued against it or to

order sequestration of the subpoenaed documents from the prosecutorial staff. The Commission grounded its refusal of sequestration partly upon lack of reason to believe that the administrative law judge would admit into evidence materials "obtained by way of irregular, 'backdoor' discovery, rather than through ordinary discovery channels." Joint Appendix (J.App.) 24. That conclusion, however, does not necessarily eliminate the possibility of unbridled use of subpoenaed documents to develop and exploit leads to other evidence.

7. "Any documents, papers, books, physical exhibits, or other materials or information obtained by the Commission under any of its powers may be disclosed by counsel representing the Commission when necessary in connection with adjudicative proceedings and may be offered in evidence by counsel representing the Commission in any such proceeding." 16 C.F.R. § 3.43(c) (1977).

8. Maj. Op., Part II.

terms of its regulations,[9] the outcome here necessarily depends upon the construction properly to be ascribed to those that bear on the instant dispute.

An agency's construction of its own regulations is authoritative; it is a construction to which courts must give great deference.[10] Most appropriately, then, the court leaves the interpretation of pertinent rules to administrative officials in the first instance.[11] In the process, however, the court undertakes to alter the normal course of adjudicative discovery, which the Commission's rules commit to the presiding administrative law judge,[12] by directing the District Court to remand this worn-out proceeding[13] for an original interpretation by the Commission itself.[14] The court also orders the Commission's adjudicative staff "to return immediately to the investigative staff in the energy study all documents and materials (including copies, notes, summaries, or abstracts thereof) which they hitherto have obtained not only from Atlantic but also from the other three CAGC companies."[15]

These two requirements I separately address.

## II

Normally, the role of federal courts in subpoena-enforcement cases is narrowly circumscribed;[16] the court must effectuate the subpoena "if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."[17] There is no contention, nor hardly could there be, that the Commission's investigative subpoena fell short of these standards.[18] To be sure, the limited area for judicial inquiry is expandable to allow a demonstration that the court's processes are being abused;[19] equally plain it is that "[s]uch an abuse would take place if the summons had been issued for an improper purpose, such as to harass the [subpoenaed party] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."[20] In

9. *Vitarelli v. Seaton*, 359 U.S. 535, 539–540, 79 S.Ct. 968, 972–973, 3 L.Ed.2d 1012, 1016–1017 (1959); *Service v. Dulles*, 354 U.S. 363, 388–389, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403, 1418 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 266–267, 74 S.Ct. 499, 503, 98 L.Ed. 681, 686 (1954).

10. "An agency's construction of its own regulation demands deference by the courts, and is not to be upset unless inconsistent with the regulation or unreasonable." *Koch Indus. v. FPC*, 180 U.S.App.D.C. 299, 304, 554 F.2d 1158, 1163 (1977), citing *INS v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 1525–1526, 23 L.Ed.2d 101, 109 (1969); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616, 625–626 (1965); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702 (1945); *Gueory v. Hampton*, 167 U.S.App.D.C. 1, 4–5, 510 F.2d 1222, 1225–1226 (1974); *Gulf Oil Corp. v. Hickel*, 140 U.S.App.D.C. 368, 372–373, 435 F.2d 440, 444–445 (1970); *Udall v. Oelschlaeger*, 129 U.S.App.D.C. 13, 15, 389 F.2d 974, 976, *cert. denied*, 392 U.S. 909, 88 S.Ct. 2056, 20 L.Ed.2d 1367 (1968).

11. I do not join in Part II of the majority opinion, or intimate any view as to how the rules should be interpreted.

12. See note 5 *supra* and accompanying text.

13. Enforcement of the subpoena against Atlantic, the purpose of this lawsuit, is no longer an

objective since the subpoena has long since been complied with.

14. Maj. Op., Part II.

15. Maj. Op., text at note 24.

16. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112, 119–120 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 652–653, 70 S.Ct. 357, 368–369, 94 L.Ed. 401, 416 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 216–218, 66 S.Ct. 494, 509–510, 90 L.Ed. 614, 634–635 (1946); *FTC v. Texaco, Inc.*, 180 U.S.App.D.C. 390, 399–400, 555 F.2d 862, 871–872 (1977).

17. *United States v. Morton Salt Co., supra* note 16, 338 U.S. at 652, 70 S.Ct. at 369, 94 L.Ed. at 416.

18. See Maj. Op., Part I.

19. *United States v. Powell, supra* note 16, 379 U.S. at 58, 85 S.Ct. at 255, 13 L.Ed.2d at 119–120; *Oklahoma Press Publishing Co. v. Walling, supra* note 16, 327 U.S. at 216, 66 S.Ct. at 509, 90 L.Ed. at 634; *United States v. Newman*, 441 F.2d 165, 169 (5th Cir. 1971).

20. *United States v. Powell, supra* note 16, 379 U.S. at 58, 85 S.Ct. at 255, 13 L.Ed.2d at 120.

the case at bar, however, as the court finds, good faith in the initiation of the investigation is indubitable and the propriety of the investigative subpoenas is beyond peradventure.[21]

What Atlantic really seeks, then, is distension of the present lawsuit in an effort to accommodate issues relating solely to discovery by the Commission's prosecutorial staff in the independent adjudicative proceeding. But courts will not lightly interfere with administrative investigations by widening subpoena-enforcement litigation,[22] and they are especially loathe to do so where the subpoenaed party "is not immediately adversely affected and will have future avenues of administrative relief and judicial review open to [it]." [23] That clearly is the situation here.

Atlantic is free, as it always has been, to request the administrative law judge in the adjudicative proceeding to direct the prosecutorial staff therein to forego the subpoe-

naed documents save to the extent obtainable through orthodox discovery processes.[24] Should Atlantic be displeased with the judge's ruling, it can then seek review by the Commission.[25] Should the matter not then be resolved satisfactorily, Atlantic can, of course, press its claim judicially by appeal from any adverse order of the Commission. While Atlantic might have to travel through the adjudicative proceeding, its plight is no worse than that of any other litigant denied suppression of unprivileged information in ongoing litigation.[26] Indeed, Atlantic is significantly better off than most, for although Commission counsel contend that the prosecutorial staff is legally free to obtain the documents, it is by no means certain that it will attempt to do so.[27] With the opportunity Atlantic has to seek a protective order in the adjudicative proceeding, and to secure both administrative and judicial review should that become necessary, I see no occasion for this court's intervention at this time.[28]

21. Maj. Op., Part II.

22. See cases cited *supra* note 16.

23. *FTC v. Gallo*, 1973–2 Trade Cas. ¶ 74,740 at 95,243 (D.D.C.1973).

24. Not only could Atlantic have taken that route at any time during this litigation, but the Commission afforded it a special opportunity for a 30-day period, during which the Commission agreed to refrain from transmitting any documents from the investigative to the prosecutorial staff. See note 27 *infra*.

25. See *Horizon Corp.*, 88 F.T.C. 208, 209 (1976), where the administrative law judge certified a similar question to the Commission.

26. Compare *English v. Cunningham*, 108 U.S. App.D.C. 356, 357, 282 F.2d 839, 840 (1960); *Baker v. United States Steel Corp.*, 492 F.2d 1074, 1077–1078 (2d Cir. 1974); *Borden Co. v. Sylk*, 410 F.2d 843, 846 (3d Cir. 1969); *Dow Chem. Co. v. Taylor*, 519 F.2d 352, 354–355 (6th Cir.), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975).

27. In a post-argument memorandum submitted to the court, the Commission represented that none of the subpoenaed data had been examined by the prosecutorial staff and none would be for at least the next ensuing 30 days. See note 24 *supra*. The Commission cautioned that this was not to be taken as a suggestion that the prosecutorial staff might not seek access to

the materials at some future time. Thus we really do not know whether any documents have been or would in any event be made available to the prosecutorial staff.

28. Compare *In re Corporate Patterns Report Litigation*, Misc. No. 76–0126 (D.D.C. Apr. 12, 1977), where the court similarly required subpoenaed parties to assert their claims before the administrative law judge. The court said:

> [T]he court is reluctant to enter the discovery phases of the [adjudicative] proceedings. The respondents in those proceedings can raise before the Administrative Law Judge their contentions as to use of [subpoenaed documents] should that issue in fact arise. The [administrative law judges] are intimately familiar with those cases and the scope of discovery authorized. Should violations of the discovery orders or of the [Commission's] procedural rules be alleged, the [administrative law judges] would be in the best position to determine that claim. If data obtained from the [subpoenaed documents] is offered in evidence in those cases, the corporate parties will have the opportunity to object to the introduction of such evidence. And if the corporate parties suspect that [subpoenaed documents have] provided leads for the development of evidence offered, they again will have the opportunity to object to the tainted evidence before the [administrative law judges].

As I see it, the difficulty is more than simply that the court requires the Commission to address and resolve in a subpoena-enforcement action a dispute beyond its limited range. The Commission's regulations unmistakably contemplate that all matters of discovery in adjudicative proceedings will originate before the administrative law judge presiding thereover.[29] No exception is made for discovery sought by the Commission's staff, or for discovery dependent upon interpretation of discovery rules, or even for efforts to confine discovery to its legitimate sphere. Beyond those considerations, the Commission has already indicated its preference that the judge handling the *Exxon* case will deal with Atlantic's complaint initially.[30] But now the court upsets the scheme of the Commission's procedural regulations and frustrates the Commission's expectations for this very controversy. I perceive no reason why, in accommodating the problem before us, the court cannot honor the Commission's procedural methodology and manifest the respect its wishes are due.[31]

### III

Courts will intervene in ongoing administrative proceedings only for compelling reasons.[32] Intrusion is warranted, if at all, only after the most scrupulous appraisal of competing elements.[33] Not the least among the factors to be weighed is the continuing ability of the judiciary to rectify administrative errors after the administrative process has fully run its course.[34] These wholesome considerations have largely been disregarded in the case before us.

The court bars, for an uncertain period,[35] resort in the adjudicative proceeding to the documents subpoenaed not only from Atlantic but also from its three nonprotesting joint adventurers.[36] The injunction is total; any and all uses are banned, even those which might be innocuous or in no way objectionable to Atlantic.[37] And the court does this on a record that affords us no idea as to what the impact on the *Exxon* proceeding may be.[38]

The court's only stated reason is that its action is taken "[i]n order to prevent any

---

29. See 16 C.F.R. §§ 3.31–3.36, 3.42 (1977).

30. When, much earlier, Atlantic asked the Commission to sequester the subpoenaed documents, the Commission was quite content to leave adjudicative discovery wholly to the administrative law judge. The Commission then made clear that it does not anticipate introduction into evidence of documents derived from "irregular, 'backdoor' discovery." See note 6 *supra.* While the Commission did not express itself on the possibility that leads to other evidence might be secured, I am unwilling to assume that the Commission would countenance covert—any more than overt—uses of the documents in question.

31. Notwithstanding the court's committal of the interpretation directly and initially to the Commission, every ruling to be made on discovery may ultimately become the task of the administrative law judge, for there may be other reasons—beyond any sequestration implicit in the rules—that would dictate nonaccessibility to the prosecutorial staff, at least as to particular documents.

32. *McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194, 203 (1969); *SEC v. R. A. Holman & Co.,* 116 U.S.App.D.C. 279, 282, 323 F.2d 284, 287, *cert. denied,* 375 U.S. 943, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963); *Bristol Myers Co. v. FTC,* 469 F.2d 1116, 1118

(2d Cir. 1972); *Hunt v. United States,* 301 F.2d 663 (4th Cir. 1962).

33. See cases cited *supra* note 32.

34. See cases cited *supra* note 32. Judicial stay of an administrative order affords an apt analogy. Considerations to be balanced are the movant's chances of prevailing on the merits, the threat of irreparable injury to him without a stay, the harm that a stay might inflict upon his opponent, and the public interest at stake. *E. g., Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958). Here, however, at the hand of the court, Atlantic has become the beneficiary of a stay of any and all uses of the subpoenaed documents in the adjudicative proceeding—without any balancing at all.

35. See text *supra* at note 30.

36. See Maj. Op., text at note 24.

37. See Maj. Op., text at note 24.

38. The Commission does claim another consequence in another respect. One of the reasons it assigned for denial of Atlantic's request for sequestration was "the substantial administrative burden which would be occasioned by sequestering information within groups of staff

possible prejudice to Atlantic, and to ensure that discovery in the *Exxon* proceeding proceeds according to the Commission's interpretation of the FTC rules . . . ." [39] But it is common ground that Atlantic is and long has been at liberty to seek a protective order from the administrative law judge. All agree, too, that Atlantic has an open door to judicial review once that proceeding comes to an end.

I realize that sequestration is not permanent, and that some day the subpoenaed documents may play a role in the *Exxon* proceeding.[40] But at the very minimum, the court freezes what may be an important phase of adjudicative discovery for a substantial era without ever having ruled on the merits of Atlantic's claim. The uncertain prospect that it may later be found that the prosecutorial staff improperly utilized evidence come by only through the investigative subpoenas does not in my view justify this imposition upon traditional administrative and judicial processes. . A party normally would be required to request relief from any available administrative source, and would not be permitted to press his claim in court until after the final adjudicative decision. Atlantic hardly deserves special treatment.

attorneys engaged in Commission activities . . . ." J.App. 25. See also Maj. Op., Parts I & II.

**39.** See Maj. Op., text at note 24.

**40.** Although the stated objective of the sequestration order is to preserve Atlantic's rights pending the Commission's construction of its discovery rules, the court nowhere states expressly just when the order will terminate. I take it that the court intends that the directive remain in force only until the Commission announces its interpretation. Should, however, the Commission conclude that the rules do not

limit access by the prosecutorial staff, the documents seemingly can be turned over to the prosecutorial staff immediately, and then the event the court fears—access to the documents by the prosecutorial staff without supervision by the administrative law judge—will have come to pass. Since the court evidently believes that any such turnover can be satisfactorily dealt with on appeal from any final decision of the Commission in the adjudicative proceeding, it is not readily apparent why the court finds it necessary to interpose in the administrative process at this time.